UNITED STATES of America, Appellee,

v.

Christopher D. MACKEY,
Defendant, Appellant.

No. 94–2264.

United States Court of Appeals,
First Circuit.

Heard March 9, 1997.

Decided July 9, 1997.

John D. Fitzpatrick, by Appointment of the Court, Boston, MA, for defendant, appellant.

Ben T. Clements, Assistant United States Attorney, with whom Donald K. Stern, United States Attorney, was on brief, for the United States.

Before BOUDIN, Circuit Judge,
BOWNES, Senior Circuit Judge and
LYNCH, Circuit Judge.

BOUDIN, Circuit Judge.

In July 1993, a federal grand jury indicted Christopher Mackey under 18 U.S.C. § 2113(a) and charged him with four separate robberies of federally insured banks located in the same area southeast of Boston: the South Shore Bank in North Weymouth (November 1991), the Weymouth Cooperative Bank in Weymouth (December 1991), the South Shore Bank in Quincy (February 1992), and the Abington Savings Bank in Abington (September 1992). Trial occurred in August 1994.

At trial, the government's evidence showed that all four banks had been robbed by a white male who carried a dark-colored handgun and wore sports warm-up clothes, together with a scarf and a ski hat that hid his entire face except for his eyes. Photographs from surveillance cameras and witness identifications tended to confirm that the same individual was involved in each robbery. In the last robbery, the robber removed his scarf and ski hat as he left the bank and was positively identified as Mackey by two witnesses.

Mackey's girlfriend owned a car, available to Mackey during the day, whose license plate and appearance matched partial descriptions of the robber's car provided by witnesses at the second and third robberies. Mackey owned and often wore sweatshirts, including a sweatshirt and scarf matching those worn in the third robbery. Mackey, his parents, and his girlfriend all lived in the vicinity of the robberies.

The first three robberies netted the robber only modest amounts, totalling under $10,-000. In the final robbery, where the robber gained access to the bank vault, he took $321,500. The government offered evidence at trial that, although Mackey did not have a steady job, he made cash expenditures of more than $90,000 in the five months following the last robbery.

The jury convicted Mackey of all four robberies. He now appeals his convictions, but not his sentence. In this court, Mackey makes three claims of error, the latter two being closely related.

■ 1. In his first claim of error, Mackey asserts that the trial judge erred in refusing to sever the last-in-time bank robbery count—the Abington robbery in September 1992—from the three earlier robbery counts. The four counts were properly joined under Fed.R.Crim.P. 8(a) as charging offenses "of the same or similar character." *E.g., United States v. Taylor,* 54 F.3d 967, 973 (1st Cir. 1995). But Mackey argues that the Abington robbery differed in certain respects from the other three, and that this count should have been severed under Fed.R.Crim.P. 14 in order to avoid prejudicial "spillover."

We agree that the eyewitness identification of Mackey in the Abington robbery could have helped persuade the jury that he had also committed the earlier three robberies where there was no such direct identification. However, the evidence concerning the Abington robbery would have been admissible, even in a separate trial of the other three robbery counts, in order to show identity. *See* Fed.R.Evid. 404(b); *Taylor,* 54 F.3d at 974 n. 5; *United States v. Levi,* 45 F.3d 453, 455 (D.C.Cir.), *cert. denied,* 515 U.S. 1133, 115 S.Ct. 2560, 132 L.Ed.2d 813 (1995). The same "spillover" would therefore have occurred, and legitimately so, even if a severance had been granted.

■ Joinder of counts is often maintained even where evidence of one crime would not be admissible as substantive proof of the other. But in this case the admissibili-

ty of the Abington robbery under Rule 404(b) completely undermined any claim of unfair prejudice on the three other counts. *Levi*, 45 F.3d at 455. Refusal to sever under Rule 14 is reviewed only for abuse of discretion, *Taylor*, 54 F.3d at 974, but in this instance refusal to sever was not error under any standard of review.

2. Mackey's second claim of error is that the district judge should have insisted upon a grant of immunity for a proposed defense witness. The witness, Michael Munichiello, served as Mackey's bookie. In March 1993, Munichiello told investigating officers from the FBI and the state police that Mackey had enjoyed an "unbelievable" winning streak in baseball betting during the late summer of 1992 and won approximately $60,000.

This information would have been of some help to Mackey at trial in explaining his expenditures of $90,000 in the fall and winter of 1992, although Munichiello also told the agents that Mackey had lost about $40,000 betting on football in the fall of 1992. But at trial, when Mackey aimed to call on Munichiello as a defense witness, Munichiello asserted his Fifth Amendment privilege against self-incrimination (outside the presence of the jury) and declined to answer questions about his bookmaking activities with Mackey.

The government declined to offer Munichiello immunity under 18 U.S.C. § 6003 so that Mackey could secure the testimony. The prosecutor said that he thought Munichiello's statement about the $60,000 in winnings was false (because of other evidence indicating that Mackey had no interest in betting on baseball); and, although the prosecutor did not know of any pending investigation of Munichiello, he said that immunizing the testimony could undermine possible future prosecution of Munichiello.

Mackey requested that the court order Munichiello to be immunized. The district court declined to do so, providing a thoughtful explanation and discussing circuit case law on this subject. It concluded that there was no showing of prosecutorial misconduct in the refusal to seek immunity; and even if a right to secure witness immunity were available wherever needed to present an "ef-

fective defense," Mackey had not shown that Munichiello's testimony was clearly exculpatory, or essential to the defense, or being withheld without good reason.

Despite the refusal of the court to insist upon immunity, Mackey made a stab at providing his baseball-winnings story to the jury. The defense furnished phone-record evidence that Mackey regularly telephoned his bookie during the summer of 1992; and another friend of Mackey's testified that Mackey had won a substantial sum of money in the summer of 1992. Mackey himself could have testified on this subject but chose not to testify at all as was his right. *Cf. United States v. De La Cruz*, 996 F.2d 1307, 1313 (1st Cir.), *cert. denied*, 510 U.S. 936, 114 S.Ct. 356, 126 L.Ed.2d 320 (1993).

The power to confer witness immunity under the statute has been given to the prosecutor, not the judge. *See* 18 U.S.C. § 6003. However, the circuits have agreed that in certain extreme cases of prosecutorial misconduct, the government's refusal to grant immunity could justify a court's refusal to allow the prosecution to proceed. *See United States v. Angiulo*, 897 F.2d 1169, 1190 (1st Cir.), *cert. denied*, 498 U.S. 845, 111 S.Ct. 130, 112 L.Ed.2d 98 (1990). Indeed, *Angiulo* and other cases it collects, *see id.* at 1192, go beyond affirmative misconduct and suggest that the government could not withhold immunity solely in order to keep exculpatory evidence from the jury.

In this case, there is no indication of affirmative government misconduct, *see id.*, or that the government acted in bad faith when it said that immunity might interfere with the future prosecution of Munichiello. This latter concern has been a constant theme in the circuit court opinions, *e.g., id.* at 1193, and a major reason why judges have not shared the enthusiasm of student law review editors for creating a "right" of defendants to insist on immunity for defense witnesses. Judge Newman's thorough discussion of the subject and case law in *United States v. Turkish*, 623 F.2d 769, 772–79 (2d Cir.1980), *cert. denied*, 449 U.S. 1077, 101 S.Ct. 856, 66 L.Ed.2d 800 (1981), makes repetition unnecessary.

The only odd twist in this case is the government's claim that Munichiello would have lied if he had been immunized. The government's belief would obviously be pertinent if it were considering whether to immunize witness testimony to present as part of the prosecution's case. *See United States v. Agurs*, 427 U.S. 97, 103, 96 S.Ct. 2392, 2397, 49 L.Ed.2d 342 (1976). But one might think that it was a matter for the jury, not the prosecutor, to decide whether testimony seemingly helpful to the defendant was actually false. Surely this would be so if the question were one of disclosing exculpatory evidence under *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963).

In all events, the government here did have a distinct, and asserted primary, reason for refusing to grant immunity, namely, the risk of compromising any future prosecution of Munichiello. Mackey argues that the government's actual interest in future prosecution of Munichiello was pretty limited. Yet, most courts have been unwilling to engage in such a weighing of respective interests, just as they decline to weigh risk against need when a witness colorably asserts his Fifth Amendment privilege. Such an evaluation would be especially cumbersome where, as here, the subject is largely within the expertise of the prosecutor. *See Turkish*, 623 F.2d at 776–77.

■ In this court, Mackey relies upon the so-called "effective defense theory," which posits that a strong need for exculpatory testimony can override even legitimate, good faith objections by the prosecutor to a grant of immunity. This theory has been accepted only in one circuit, *see Government of the Virgin Islands v. Smith*, 615 F.2d 964, 974 (3d Cir.1980), but rejected in a number of circuits. *Angiulo*, 897 F.2d at 1191 (collecting citations). For reasons amply set forth in *Turkish*, we think the majority view is sound and that, in general, courts have no power to compel immunity in the face of a good faith refusal by the prosecutor.

Perhaps an exception to this rule might exist upon very extreme facts. Imagine a case where the prosecutor has only a trivial interest in withholding immunity and—to avoid a complete miscarriage of justice—the defendant has an overwhelming need for specific exculpatory evidence that can be secured in no way other than through the grant of immunity. At least, such a case might present a question under the Due Process Clause of the Fifth Amendment. The present facts are not within a country mile of a constitutional violation.

3. Balked by the refusal to require immunity, Mackey asked the court to admit as evidence Munichiello's out-of-court statement to the investigating agents that Mackey had won $60,000 on baseball bets in the summer of 1992. To overcome the hearsay objection, Mackey invoked both the public records exception, Fed.R.Evid. 803(8)(C), and the exception for statements against penal interest, Fed.R.Evid. 804(b)(3). The district court gave careful consideration to the request and ultimately ruled that neither exception applied. We consider the two provisions in order.

■ On its face, the FBI report recording the interview with Munichiello might at first glance appear to fit within the body of the public records exception. The pertinent language of Rule 803(8)(C) creates a hearsay exception that includes:

> Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth ... [where offered against the government in criminal cases] factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

■ The FBI report, however, did not find or conclude that Mackey had won $60,000, but merely that Munichiello had made that statement. In line with the advisory committee note to Rule 803(8), decisions in this and other circuits squarely hold that hearsay statements by third persons such as Munichiello are not admissible under this exception merely because they appear within public records. *United States v. Tajeddini*, 945 F.2d 458, 464–65 (1st Cir.1991) (citing cases), *cert. denied*, 505 U.S. 1211, 112 S.Ct. 3009, 120 L.Ed.2d 883 (1992). This is the same

"hearsay within hearsay" problem that is familiar in many contexts.

 If Munichiello's statement to the FBI agent was itself admissible under some hearsay exception, then the statement could have been proved straightforwardly by calling the FBI agent or possibly through the FBI report. Rule 804(b)(3) does admit hearsay statements, where the witness is now unavailable, which so far tended to subject the declarant to criminal liability that a reasonable person would not have made the statement unless believing it to be true. But a proviso to this portion of the rule states:

> A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

 The underlying concern, of course, is that one criminal can make out-of-court statements exculpating another and then rather easily claim the privilege when the government seeks to cross-examine him to discredit the statement. The proviso, in insisting on corroborating circumstances, is an effort to adjust the balance. We have said that the requirement for corroboration is not unrealistically severe but does go "beyond minimal corroboration" and that the district court has "a substantial degree of discretion in making this important finding on trustworthiness." *United States v. Barrett*, 539 F.2d 244, 253 (1st Cir.1976).

There was plenty of corroboration that Mackey placed bets with Munichiello. But for a statement to be admissible under the exception, there must be indicia of trustworthiness of the specific, "essential" assertions, not merely of other facts contained in the statement. *United States v. Zirpolo*, 704 F.2d 23, 27 n. 4 (1st Cir.), *cert. denied*, 464 U.S. 822, 104 S.Ct. 87, 78 L.Ed.2d 96 (1983). Here, the issue in the district court was whether there was evidence that "clearly indicate[s] the trustworthiness" of the specific statement that Mackey won large sums betting on baseball in the summer of 1992.

One of Mackey's friends testified that Mackey bet on baseball and won at least $40,000 on baseball gambling in the late summer of 1992. But there was no other specific evidence of a long winning streak or large winnings, although Mackey apparently discussed his betting openly with friends and family; and, more important, two of Mackey's girlfriends who were familiar with his betting habits testified that Mackey was not interested in baseball. Munichiello may well have told the truth to the agents but, on the facts just recited, we think it impossible to say that the district court abused its discretion in concluding that the circumstances did not "clearly indicate the trustworthiness of the statement."

*Affirmed.*