Sullivan
No. 2009-321

THE STATE OF NEW HAMPSHIRE

v.

DARLENE NIGHTINGALE

Argued: June 15, 2010
Opinion Issued: July 23, 2010

*Michael A. Delaney*, attorney general (*Susan P. McGinnis*, senior assistant attorney general, on the brief and orally), for the State.

*Lisa L. Wolford*, assistant appellate defender, of Concord, on the brief and orally, for the defendant.

DALIANIS, J. The defendant, Darlene Nightingale, appeals her conviction by a jury of felony sale of a controlled drug (Oxycontin) within 1,000 feet of a school. *See* RSA 318-B:2, I (Supp. 2009); RSA 318-B:26, V (Supp. 2009). On appeal, she argues that the Superior Court (*Arnold*, J.) erred by: (1) denying her motion to preclude certain evidence; (2) denying her request for a jury instruction to limit the jury's consideration of that evidence; (3) denying her motion to dismiss; and (4) allowing the confidential informant to testify that she participated in another drug transaction for the New Hampshire Drug Task Force. We affirm.

*I. Background*

The jury could have found the following facts. In July 2006, the confidential informant was arrested for driving after having been certified as a habitual offender. She contacted the New Hampshire Drug Task Force to see if she could obtain help with this charge in exchange for providing information regarding drug transactions. The informant understood that "if [she were] cooperative and helped in roughly two or three controlled buys" from two or three prospective targets, her cooperation "would work in [her] favor." The informant's "case agent" at the task force, Detective N., asked the informant to target the defendant, who shared a house with Nicole Moulton.

On October 21, 2007, the defendant asked the informant to accompany her to Concord to buy cocaine. The informant called Detective N., who said that he would be interested in buying an "eight ball" of cocaine from the defendant. An eight ball is approximately three and one half grams of cocaine. After speaking with Detective N., the informant told the defendant that her ex-boyfriend, "Porter," wanted to buy an eight ball of cocaine. "Porter" was, in fact, Detective N.

The defendant and the informant left Claremont for Concord at around 10:30 a.m. Throughout the day, the informant kept in close contact with Detective N. about the planned cocaine purchase by phoning and sending him text messages. At around 7:00 p.m., the informant told Detective N. that the defendant had purchased three eight balls of cocaine in Concord. At approximately 10:15 p.m., the informant told Detective N. that the defendant had said that he could not purchase the cocaine from her until the next day, but that she had offered to sell him Oxycontin that night "to tide [him] over until the next day when [he] would have a chance to get the cocaine." As Detective N. explained at trial: "I was portraying a role of wanting the cocaine [for my] . . . customers . . . . And if I didn't have the cocaine, my customers . . . were not going to be happy. So at least . . . I could get some Oxycodones . . . to basically tide them over for the night until I could get the cocaine the next day." The parties agreed to meet at the Cumberland Farms store on Pleasant Street in Claremont for the Oxycontin sale. This store is less than 1,000 feet from Stevens High School.

At approximately 10:37 p.m., the defendant arrived at Cumberland Farms, and Detective N. entered her van. The defendant was in the driver's seat, the informant was in the passenger seat, and the detective sat in the middle of the back seat. The defendant told the detective that she had purchased three eight balls of cocaine, but that she had left them at the Plainfield house of her friend, Pat Poulin, because she was worried that her boyfriend would call the police if she brought them to her own house. The

defendant told the detective that she could meet him between 9:00 and 10:00 a.m. the following day to sell him one of the eight balls. The defendant then opened her purse and removed a prescription bottle. The detective inquired whether the pills were ten or twenty milligrams, to which she responded that they were ten milligrams. The defendant offered to sell ten of the pills to the detective for sixty dollars. The detective handed the defendant the money, and the defendant opened the prescription bottle and dumped the pills into his hand. He wrapped the pills in a cellophane wrapper from a cigarette pack and left the vehicle. Thereafter, the defendant was charged with selling Oxycontin within 1,000 feet of a school.

## II. Analysis

### A. Admissibility of "Cocaine Conversations"

The defendant first argues that the trial court erred when it denied her motion *in limine* to exclude evidence that she and the informant allegedly traveled to Concord to buy cocaine. The defendant argued to the trial court, and argues on appeal, that this evidence is inadmissible under New Hampshire Rule of Evidence 404(b). The record on appeal reveals that the trial court, in fact, granted this motion in part. In its order, the trial court ruled that evidence of the trip to Concord was inadmissible (although we note that this evidence was admitted at trial without objection) but that the conversations in which Detective N. placed an order for an eight ball of cocaine and in which the defendant said that she could not sell him the cocaine yet, but would sell him Oxycontin were admissible. These conversations, the trial court ruled, showed "the context of the sale as well as the defendant's motive for selling." The court ruled that they "indicate[d] a plan to sell cocaine" to the detective.

We review the trial court's ruling for an unsustainable exercise of discretion, and will reverse only if it was clearly untenable or unreasonable to the prejudice of the defendant's case. *State v. Russell*, 159 N.H. 475, 482-83 (2009). Because the trial court ruled upon the admissibility of the challenged evidence before trial, "we consider only what was presented at the pretrial hearing." *Id.* at 483 (quotation omitted). "We so limit our review to avoid the pitfall of justifying the court's pretrial ruling upon the defendant's response at trial to the evidence." *State v. Glodgett*, 144 N.H. 687, 694 (2000) (quotation and brackets omitted).

Rule 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person

acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Other bad acts evidence is admissible when: (1) it is relevant for a purpose other than proving the defendant's character or disposition; (2) there is clear proof that the defendant committed the act; and (3) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice to the defendant. *State v. Beltran*, 153 N.H. 643, 647 (2006). The State bears the burden of demonstrating the admissibility of other bad acts. *Id.*

■ Although this test must be applied before evidence of "other crimes, wrongs or acts" may be admitted, Rule 404(b) does not apply here. *See State v. Kulikowski*, 132 N.H. 281, 287 (1989). The challenged conversations are not "other crimes, wrongs or acts," but rather are "inextricably intertwined with evidence of the crime charged in the indictment." *United States v. Barnes*, 49 F.3d 1144, 1149 (6th Cir. 1995) (quotation omitted); *see United States v. LaDue*, 561 F.3d 855, 857-58 (8th Cir. 2009). The conversations at issue and the crime charged in the indictment "are part of a *single* criminal episode." *Barnes*, 49 F.3d at 1149 (emphasis added). Therefore, Rule 404(b) does not apply, *see id.*, and the applicable test for admissibility is found in New Hampshire Rule of Evidence 403. *Kulikowski*, 132 N.H. at 287.

■ Under Rule 403, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Evidence is unfairly prejudicial if its primary purpose or effect is to appeal to a jury's sympathies, arouse its sense of horror, provoke its instinct to punish, or trigger other mainsprings of human action that may cause a jury to base its decision on something other than the established propositions in the case. *State v. Ainsworth*, 151 N.H. 691, 696 (2005). Unfair prejudice is not, of course, mere detriment to a defendant from the tendency of the evidence to prove guilt, in which sense all evidence offered by the prosecution is meant to be prejudicial. *State v. Giddens*, 155 N.H. 175, 180 (2007). Rather, the prejudice required to predicate reversible error is an undue tendency to induce a decision against the defendant on some improper basis, commonly one that is emotionally charged. *Id.* Among the factors we consider in weighing the evidence are: (1) whether the evidence would have a great emotional impact upon a jury; (2) its potential for

appealing to a juror's sense of resentment or outrage; and (3) the extent to which the issue upon which it is offered is established by other evidence, stipulation or inference. *State v. Howe*, 159 N.H. 366, 378 (2009).

"The trial court is in the best position to gauge the prejudicial impact of particular testimony, and what steps, if any, are necessary to remedy that prejudice." *State v. Sonthikoummane*, 145 N.H. 316, 324 (2000) (quotation and brackets omitted). Thus, we give the trial court broad latitude when ruling on the admissibility of potentially unfairly prejudicial evidence. *Id.* Accordingly, we will not disturb the trial court's decision absent an unsustainable exercise of discretion. *State v. Miller*, 155 N.H. 246, 252 (2007).

 First, we consider the probative value of the evidence. *Howe*, 159 N.H. at 378. This entails analyzing how relevant the evidence is. *Id.* Relevant evidence may have limited probative value. *Id.* Here, as the trial court aptly found, the challenged conversations were relevant and probative to show "the context of the sale as well as the defendant's motive for selling" drugs, which was to pay her mortgage. The conversations were also relevant and probative to show that selling Oxycontin to Detective N. was part of the defendant's overall plan, which began with her plan to sell him cocaine.

Additionally, the conversations were relevant and probative to show that, despite her claims to the contrary, it was the defendant, and not the informant, who sold the Oxycontin to the detective. While at the motion *in limine* hearing the defendant's friend, Nicole Moulton, testified that the defendant told her that the informant "sold a guy pills" and the defendant "just drove her there," evidence that the defendant spoke with the detective about selling him cocaine is relevant to show that it was she, and not the informant, who sold him Oxycontin.

 Next, we consider whether the danger of unfair prejudice to the defendant from admission of this evidence substantially outweighed its probative value. *Id.* In the context of this case, we cannot say that evidence that the detective originally sought to buy cocaine and that the defendant sold him Oxycontin instead to "tide [him] over" was likely to have any greater emotional impact upon the jury than the charged sale of Oxycontin. *See id.* Although the evidence of the challenged conversations "may have been prejudicial, we cannot conclude that the evidence was so inflammatory as to substantially outweigh its probative value." *Id.* (quotation omitted). While the trial court applied Rule 404(b), instead of Rule 403, we uphold its determination nonetheless because "where the trial court reaches the

correct result on mistaken grounds, we will affirm if valid alternative grounds support the decision." *State v. Wamala,* 158 N.H. 583, 591-92 (2009) (quotation omitted).

### B. Jury Instructions

The defendant next asserts that the trial court erred when it failed to give her requested limiting instruction. The defendant proposed that the court instruct the jury as follows regarding the cocaine evidence:

> The State here has introduced evidence that the defendant committed other illegal acts that are not charged in the indictment. Specifically, the State claims that the defendant possessed Cocaine and offered to sell [it] to Detective [N].
>
> You may consider this evidence for the narrow purpose of deciding whether the State has proven beyond a reasonable doubt the identity of the defendant as the person who committed the crime charged. If you believe that the defendant committed the prior illegal acts, then you may use that evidence in deciding whether a mistake has been made in identifying the defendant as the person who committed the offense charged. You may not, however, use this evidence for any other purpose. Specifically, you may not consider this evidence of the defendant's character as proof that the defendant was disposed to commit the crime charged. The defendant's character is not an issue in this case. Keep in mind that your duty is to decide whether the State has proven that the defendant committed the particular crime charged in the indictment.

The court declined to give this instruction, instructing the jury, instead, as follows:

> The State has introduced evidence that the defendant committed other illegal acts that are not charged in the indictment. Specifically, the State claims that the defendant possessed cocaine and offered to sell cocaine to Detective [N]. This evidence was presented to provide context and background for the charge before you and should not be considered for any other purpose.

The defendant, however, did not object to this instruction either when first read to counsel or later when given to the jury. When the trial court read this instruction, defense counsel said: "I say leave it in," and "I think it's fine." When the court later read it to the jury, defense counsel stated that counsel had "[n]othing to add." Under these circumstances, we conclude that the defendant has not preserved her argument for our review.

■ As a general rule, a contemporaneous objection is necessary to preserve a jury instruction issue for appellate review. *Ainsworth*, 151 N.H. at 693. This requirement affords the trial court an opportunity to correct an error it may have made and is particularly fitting when an alleged error involves a jury instruction. *Id.* at 693-94. This long-standing requirement is grounded in common sense and judicial economy. *Id.* at 694. To preserve a jury instruction issue for our review, counsel must do more than merely submit proposed instructions to the trial court, *see Fischer v. Hooper*, 143 N.H. 585, 597 (1999), debate possible instructions with the trial court, *see Berliner v. Clukay*, 150 N.H. 80, 84-85 (2003), or object generally to the admissibility of the evidence itself, *see State v. Eldredge*, 135 N.H. 562, 564-65 (1992). To preserve a jury instruction issue for our review, counsel must actually make a specific objection to the court's jury instructions. *See Berliner*, 150 N.H. at 84.

■ On appeal, the defendant complains that the trial court's use of the broad terms "context" and "background," without more, insufficiently defined the permissible use that the jury could make of the evidence. This claim was *not* made to the trial court. "Any infirmity in the scope or clarity of the limiting instruction was not communicated to the court . . . ." *Eldredge*, 135 N.H. at 565. As "[t]he trial court was never given the opportunity to assess the merit of the defendant's objection[, w]e decline to consider it for the first time on appeal." *Id.*

### C. Use Immunity

The defendant next contends that the trial court erred when it denied her motion to dismiss after the State refused to grant derivative use immunity to Poulin, one of her witnesses. The defendant expected Poulin to testify that he traveled to Concord with the defendant and the informant on the day in question but there was no conversation about buying drugs in Concord, that no cocaine was actually bought, and that, although the defendant told the detective that she left cocaine at Poulin's house, she did not, in fact, do so. At a *Richards* hearing, *see State v. Richards*, 129 N.H. 669, 673-74 (1987), Poulin asserted his right to remain silent under the Fifth Amendment to the Federal Constitution and refused to answer any questions about the trip to Concord.

After the court sustained Poulin's assertion of this right, the defendant argued that the court should either compel the State to grant derivative use immunity to Poulin or dismiss the indictment. The court refused to do either, which the defendant now claims violated her due process rights. Because the defendant has not cited a specific provision of the State Constitution in her brief, we review her claim under only the Federal Due Process Clause. *See State v. Dellorfano*, 128 N.H. 628, 632 (1986).

■ "It is well-settled that a defendant has no constitutional right to have immunity conferred upon a defense witness who exercises [his] privilege against self-incrimination." *State v. MacManus*, 130 N.H. 256, 259 (1987). RSA 516:34 (2007) gives prosecutors, not judges, the power to confer witness immunity.

■ ■ "[T]he [federal] circuits have agreed," however, "that in certain extreme cases of prosecutorial misconduct, the government's refusal to grant immunity could justify a court's refusal to allow the prosecution to proceed." *United States v. Mackey*, 117 F.3d 24, 27 (1st Cir.), *cert. denied*, 522 U.S. 975 (1997). "[I]n federal courts, prosecutorial overreaching is essentially the only factor considered when analyzing a trial court's refusal to dismiss after the prosecution's denial of immunity to defense witnesses." *State v. Rogers*, 159 N.H. 50, 59 (2009). "In this case, there is no indication of affirmative government misconduct, or that the government acted in bad faith" when it declined to grant immunity to Poulin. *Mackey*, 117 F.3d at 27 (citation omitted); *see Rogers*, 159 N.H. at 59. Thus, it was not error under the Federal Due Process Clause for the trial court to deny the defendant's motion to dismiss rather than force the State to grant immunity to Poulin.

■ The defendant "relies upon the so-called 'effective defense theory,' which posits that a strong need for exculpatory testimony can override even legitimate, good faith objections by the prosecutor to a grant of immunity." *Mackey*, 117 F.3d at 28. "This theory," however, "has been accepted in only one circuit." *Id.*; *see Government of Virgin Islands v. Smith*, 615 F.2d 964, 974 (3d Cir. 1980). The majority view is that "courts have no power to compel immunity in the face of a good faith refusal of the prosecutor." *Mackey*, 117 F.3d at 28. The First Circuit has recognized that there might be an exception to this rule "upon very extreme facts," such as when "the prosecutor has only a trivial interest in withholding immunity and — to avoid a complete miscarriage of justice — the defendant has an overwhelming need for specific exculpatory evidence that can be secured in no way other than through the grant of immunity." *Id.*

■ The facts in this case, however, "are not within a country mile of [such] a constitutional violation." *Id.* There is no evidence that the State had only a "trivial interest" in withholding immunity. Nor was Poulin's expected testimony particularly exculpatory. At best, Poulin would have only impeached the defendant's own statements as well as the testimony of the informant and detective regarding the cocaine. His testimony could not have placed the defendant elsewhere or precluded the possibility that she agreed to, and eventually did, sell Oxycontin to Detective N. *See Rogers*,

159 N.H. at 58. Poulin's testimony, therefore, was not "the sort of exculpatory evidence that would have prevented the defendant's conviction." *Id.*

### D. Informant's Testimony

Finally, the defendant argues that the trial court erred when it allowed the informant to testify that, before targeting the defendant, she had worked with the drug task force on another case involving a target named "Joe," who was arrested and prosecuted for selling heroin to her. The trial court admitted the testimony under the "opening the door" doctrine, which the defendant contends was error.

 The opening the door doctrine comprises two doctrines, the "curative admissibility" and "specific contradiction" doctrines. *Wamala*, 158 N.H. at 589. The "curative admissibility" doctrine applies when inadmissible prejudicial evidence has been erroneously admitted, and the opponent seeks to introduce testimony to counter the prejudice. *Id.* The "specific contradiction" doctrine is more broadly applied when one party has introduced admissible evidence that creates a misleading advantage and the opponent is then allowed to introduce previously suppressed or otherwise inadmissible evidence to counter the misleading advantage. *Id.* This case involves the specific contradiction doctrine. We review the trial court's decision to admit evidence under the "opening the door" doctrine under our unsustainable exercise of discretion standard. *Id.* at 590. To prevail, the defendant must show that the trial court's decision was clearly untenable or unreasonable to the prejudice of her case. *Id.* at 586.

 The defendant argues that the specific contradiction doctrine does not apply here because, "at the point at which it was invoked, [the defendant] had neither introduced evidence that invited rebuttal from the State, nor impeached [the informant] through cross examination." Absent these actions, she contends, "no misleading advantage could have been created." To the contrary, we have previously held that remarks in opening statements can create a misleading advantage and, thus, trigger the specific contradiction doctrine. *See State v. Goodman*, 145 N.H. 526, 529-30 (2000); *State v. Fecteau*, 133 N.H. 860, 874 (1991).

Alternatively, the defendant contends that her counsel's opening statement did not create a misleading advantage. We hold that the trial court reasonably concluded otherwise.

In her opening statement, defense counsel told the jury that the real culprit in this case was the informant; it was she who gave the detective the pills and took his money. Defense counsel explained that the only reason that the defendant was even in the car was because the informant had lied

by telling her that "if [the informant] didn't get drugs for her ex-boyfriend he was going to beat her up." This case, defense counsel stated, "is really about a criminal, and that criminal is [the informant], attempting to get away with a serious driving offense by falsely pretending to be a woman in need of protection."

Defense counsel also told the jury that it was the informant who gave the defendant's name to the drug task force because the informant "knew that she could manipulate" the defendant. The informant, defense counsel said, "knew that [the defendant], being an abuse survivor, would be an easy target for her if she gave her a false story about being abused at the hands of her ex-boyfriend." Additionally, the informant was angry with the defendant and wanted to take revenge on her for something the defendant had done to the informant's friend.

Based upon the above, the trial court reasonably could have found that defense counsel's opening statement created the misleading impression that the informant and Detective N. had only one target, the defendant, and could have reasonably determined that the informant's testimony that she had previously targeted another person and that she was required to participate in multiple buys before the task force would help her, was necessary to counter this misleading impression. *See, e.g.*, *Mitchell v. State*, 969 A.2d 989, 1001 (Md. 2009) (opened door doctrine applies in context of opening statements); *State v. Guill*, 228 P.3d 1152, 1163 (Mont. 2010) ("A party may open the door to a given subject during its opening statement."). We find no error in the trial court's decision to admit this testimony.

*Affirmed.*

BRODERICK, C.J., and DUGGAN, HICKS and CONBOY, JJ., concurred.