# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2021-0547, <u>State of New Hampshire v. Christopher Harrington</u>, the court on November 14, 2023, issued the following order:**

The court has reviewed the written arguments and the record submitted on appeal, has considered the oral arguments of the parties, and has determined to resolve the case by way of this order. <u>See</u> <u>Sup. Ct. R.</u> 20(2). The defendant, Christopher Harrington, appeals his convictions, following a jury trial in the Superior Court (<u>Wageling</u>, J.), on three counts of aggravated felonious sexual assault, RSA 632-A:2 I(l), III (2016), and one count of felonious sexual assault, RSA 632-A:3, III(a)(1) (Supp. 2022). He argues that the trial court erred when it granted the State's pretrial motion to admit evidence of uncharged conduct, <u>see</u> <u>N.H. R. Ev.</u> 404(b), and, in the alternative, that he was denied effective assistance of counsel. We conclude that the trial court erred by granting the State's pretrial motion to admit evidence of certain uncharged conduct and that this error was not harmless beyond a reasonable doubt. Accordingly, we reverse and remand.

The record supports the following facts. The complainant and her mother were close friends of the defendant, his wife, and their child. When the complainant was four years old, she and her mother resided for eight months with the defendant and his family at the defendant's home. After she and her mother moved to their own residence, the complainant continued to spend nights and weekends at the defendant's home.

In October 2018, when the complainant was twelve years old, she told a friend that she had been sexually assaulted. The friend told one of the complainant's teachers what the complainant had said to her. The teacher told the complainant that the teacher was required to report this to the school resource officer, which she did the next day. Shortly thereafter, the complainant was interviewed at a Child Advocacy Center (CAC).

During the CAC interview, the complainant stated that she had been sexually assaulted repeatedly by the defendant when she was between the ages of nine and eleven. She recounted that, on several occasions when she visited the defendant's home, he fondled, groped, and digitally penetrated her. She said that, when she was eleven years old, the assaults stopped for approximately one year. However, she stated that there was an additional incident that occurred in autumn of 2018, shortly before the CAC interview:

the complainant and the defendant had attended the funeral of the defendant's stepfather in Massachusetts. She told the interviewer that the defendant approached her at the funeral and gave her a hug and, in so doing, he touched her buttocks and breast.

In May 2019, a grand jury indicted the defendant on three counts of aggravated felonious sexual assault (AFSA), RSA 632-A:2, I(l), III, and three charges of felonious sexual assault (FSA), RSA 632-A:3, III(a)(1), for assaults that the complainant alleged occurred within the defendant's home. The State filed no charges related to the defendant's conduct at his stepfather's funeral ("the funeral incident").

Before trial, the State filed a motion in limine to admit evidence regarding the funeral incident. At a hearing on the motion, the State argued that this evidence was admissible under New Hampshire Rule of Evidence 404(b). It sought to introduce testimony about the funeral incident to explain to the jury why the complainant disclosed the assaults one year after the last charged assault occurred. The defense argued that evidence of the funeral incident was inadmissible because it did not satisfy the requirements of Rule 404(b). The trial court granted the State's motion, and the complainant testified about the funeral incident at trial without further objection.

Following the four-day jury trial, the jury convicted the defendant on the three AFSA counts and one count of FSA, acquitting him on the other two FSA counts. This appeal followed.

The defendant raises two issues on appeal: first, whether the trial court erred when it granted the State's pretrial motion to admit evidence of uncharged conduct, see N.H. R. Ev. 404(b); and second, whether the defendant's trial counsel was ineffective for failing to move to strike the complainant's trial testimony about the funeral incident and to move for a mistrial. We begin by addressing the trial court's decision to grant the State's pretrial motion. Rule 404(b) provides:

> (b) Other Crimes, Wrongs, or Acts.—
>
> (1) Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
>
> (2) Evidence of other crimes, wrongs or acts is admissible under this subsection only if:

2

(A) it is relevant for a purpose other than proving the person's character or disposition;

(B) there is clear proof, meaning that there is sufficient evidence to support a finding by the fact-finder that the other crimes, wrongs or acts occurred and that the person committed them; and

(C) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice.

N.H. R. Ev. 404(b). The State bears the burden of demonstrating the admissibility of uncharged conduct under Rule 404(b). State v. Nightingale, 160 N.H. 569, 574 (2010).

On appeal, the defendant argues that, because the evidence does not satisfy any of the three prongs of Rule 404(b)(2), the trial court erred in ruling that the evidence of the funeral incident was admissible. The defendant also argues that, at a minimum, the trial court should have waited until trial to rule on the State's motion. The State counters that the court sustainably exercised its discretion when it concluded that the State had satisfied all three prongs of Rule 404(b)(2) with respect to evidence of the funeral incident and ruled the evidence admissible before trial. The State also argues that, even if the court erred in admitting the evidence, any error was harmless beyond a reasonable doubt.

We review the trial court's ruling for an unsustainable exercise of discretion and will reverse only if it was clearly untenable or unreasonable to the prejudice of the defendant's case. Id. at 573. Because the trial court ruled before trial regarding the admissibility of the challenged evidence, we consider only the arguments and evidence presented at the pretrial hearing. Id. "We so limit our review to avoid the pitfall of justifying the court's pretrial ruling upon the defendant's response at trial to the evidence." Id. (quotation omitted). We agree with the defendant that the trial court erred when it ruled that testimony about the funeral incident was admissible at trial. Specifically, we conclude that there was insufficient evidence presented at the pretrial hearing to support the trial court's conclusion that the third prong of Rule 404(b)(2) was satisfied — that the probative value of the evidence of the funeral incident was not substantially outweighed by the danger of unfair prejudice. See N.H. R. Ev. 404(b)(2)(C).

To address the parties' arguments regarding the third prong of Rule 404(b)(2), we must employ the same analysis that we employ under Rule 403. State v. Roy, 167 N.H. 276, 288 (2015); see also N.H. R. Ev. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice."). We accord considerable deference to the trial court's determination in balancing prejudicial impact and probative worth. See State v. Thomas, 168 N.H. 589, 602 (2016). "In determining whether a

3

ruling is a proper exercise of judicial discretion, we consider whether the record establishes an objective basis sufficient to sustain the discretionary decision made." Roy, 167 N.H. at 284 (quotation omitted). Although the proper balancing of evidence's unfair prejudice and probative value "cannot be reduced to a precise formula," we have identified several factors for the trial court to consider, including: whether the evidence would have a great emotional impact upon a jury; its potential for appealing to a juror's sense of resentment or outrage; the extent to which the issue upon which it is offered is established by other evidence, stipulation, or inference; and whether the evidence is relevant to prove an issue that is actually in serious dispute. Thomas, 168 N.H. at 602-03.

Turning first to the probative value of the funeral incident evidence, the trial court agreed with the State that the evidence was relevant to show "why [the complainant] chose to disclose the [charged assaults] when she did." The trial court ruled that the evidence had a "high probative value because it can dispel an inference that the [charged assaults] did not occur based upon [the complainant's] yearlong delay in reporting." We agree with the trial court that the disputed evidence was "relevant to prove an issue that [was] actually in serious dispute," Id. at 603 — the credibility of the complainant's claim that the charged assaults occurred.

We have observed that a child's delayed disclosure of abuse "may be puzzling or appear counterintuitive" to lay observers. State v. Cressey, 137 N.H. 402, 411 (1993). Accordingly, the State may introduce evidence to explain a sexual assault complainant's behavior, including evidence explaining a delay in disclosure. See State v. Cook, 158 N.H. 708, 713 (2009). The pretrial record demonstrates that the complainant disclosed the assaults approximately one year after they stopped and that the funeral incident precipitated the complainant's disclosure. Although, as the trial court recognized, the funeral incident evidence did not explain why the complainant delayed disclosing the abuse, it did explain the timing of her disclosure. Evidence about why she disclosed when she did was relevant to dispel an inference that she fabricated the abuse. See id.; State v. Chamberlain, 137 N.H. 414, 417-18 (1993). The funeral incident evidence was therefore probative of the important issue of the complainant's credibility.

We now turn to the danger of unfair prejudice and its relative weight as against the probative value of the funeral incident evidence. "Evidence is unfairly prejudicial if its primary purpose or effect is to appeal to a jury's sympathies, arouse its sense of horror, provoke its instinct to punish, or trigger other mainsprings of human action that may cause a jury to base its decision on something other than the established propositions in the case." State v. Palermo, 168 N.H. 387, 395 (2015) (quotation omitted). The record here demonstrates that the funeral incident evidence posed a great danger of unfair

prejudice for two reasons: it is similar in nature to the charged offenses, and the details of the incident are uniquely inflammatory.

Unfair prejudice is inherent in evidence of other similar crimes or wrongs because, notwithstanding the permissible reasons for which such evidence might be admitted, there is a risk that the jury will find the defendant had a propensity to commit the charged crime merely because the defendant committed a similar crime or wrong on another occasion. State v. Belonga, 163 N.H. 343, 360 (2012). The risk of unfair prejudice increases as the degree of similarity between the other act and the charged crime increases. See id. Here, the funeral incident involved conduct analogous to the charged crimes. The defendant was charged with sexually assaulting the complainant on several occasions by forcing her to touch his penis, digitally penetrating her vagina, and touching her vagina with his hand. Similarly, the pretrial record demonstrates that the funeral incident involved the defendant's use of his hand to touch other intimate parts of the complainant's body — her buttocks and breast. The danger of unfair prejudice posed by the introduction of this evidence was, accordingly, high: it had the potential to persuade the jury that the defendant committed the charged offenses merely because he had engaged in similar behavior on another occasion. See id.

In addition, the uncharged conduct and the context in which it occurred had the potential to appeal to "a juror's sense of resentment or outrage." Thomas, 168 N.H. at 603. Although the complainant's pre-hearing descriptions of the funeral incident differed in material respects, and the egregiousness of the conduct she described varied, the danger of unfair prejudice remained great. Specifically, during her CAC interview, the complainant stated that, at the funeral of the defendant's stepfather, the defendant consoled her while she was crying and squeezed her buttocks. She then sat down because she was uncomfortable. The defendant sat down next to her, began rubbing her shoulder, and then squeezed her breast. There was also evidence before the trial court that the complainant had minimized the incident during preparation for trial by saying that, although the defendant squeezed her buttocks, he only "grazed" her breast and this grazing was "probably just an accident." She also described the whole incident as "not a big deal."

In light of these two accounts, we agree with the trial court's observation during the motion hearing that the prejudicial impact of the complainant's testimony regarding the funeral incident would vary greatly depending on the details of the complainant's actual trial testimony. However, regardless of which version of events she ultimately testified to, both accounts included details likely to appeal to a juror's sense of resentment or outrage: that, at his stepfather's funeral, the defendant squeezed a minor child's buttocks. See id. Indeed, the trial court recognized this reality in its pretrial order, stating that "a

description of a sexual assault of a minor child at a funeral may appeal to an average juror's sense of resentment or outrage."

In sum, the unique context of the incident, a family funeral, in combination with the potential that the testimony, however minimized, would serve as propensity evidence, created a substantial danger of unfair prejudice. The trial court did not properly weigh the danger of the unfair prejudicial impact of the evidence against its probative value. Accordingly, because the record does not establish an objective basis for the trial court to have determined, as required by Rule 404(b)(2)(C), that the probative value of the funeral incident evidence was not substantially outweighed by the danger of unfair prejudice, we conclude that the trial court erred when it ruled that the funeral incident testimony was admissible. See Roy, 167 N.H. at 284.

We turn now to the question of whether the trial court's error prejudiced the defendant's case. See Nightingale, 160 N.H. at 573. We conclude that it did. Evidence of the funeral incident was admitted at trial. We have previously observed that the admission of improper Rule 404(b) evidence "is inherently prejudicial." State v. Davidson, 163 N.H. 462, 471 (2012). This is particularly so where, as here, the uncharged conduct bears some similarity to the charged conduct. See State v. Watkins, 148 N.H. 760, 767-68 (2002) (concluding that admission of conviction for prior offense was unduly prejudicial under Rule 404(b)(2)(C) in trial for later commission of same offense). Accordingly, we conclude that the trial court unsustainably exercised its discretion when it determined prior to trial that the funeral incident evidence was admissible under Rule 404(b). See Nightingale, 160 N.H. at 573.

The State argues that the error was harmless. We disagree. To establish harmless error, the State must prove beyond a reasonable doubt that the error did not affect the verdict. State v. Boudreau, 176 N.H. ___, ___ (decided June 7, 2023) (slip op. at 9). This standard applies to both the erroneous admission and exclusion of evidence. Id. at ___ (slip op. at 9). We consider the alternative evidence presented at trial as well as the character of the erroneously admitted evidence itself. Id. at ___ (slip op. at 9). To determine whether the State has proven beyond a reasonable doubt that an error did not affect the verdict, we must evaluate the totality of the circumstances at trial. Id. at ___ (slip op. at 9).[1]

---

[1] In State v. Boudreau, 176 N.H. ___ (decided June 7, 2023), we revisited our harmless error standard and adopted the totality of the circumstances approach that we apply here. However, the adoption of a totality of the circumstances approach "d[id] not fundamentally change the nature or application of the analysis this court has traditionally employed." Boudreau, 176 N.H. at ___ (slip op. at 10). Therefore, in the instant case, we refer to harmless error jurisprudence that predates Boudreau to aid our analysis.

6

The factors that we consider in assessing whether an error did not affect the verdict include, but are not limited to: (1) the strength of the State's case; (2) whether the admitted or excluded evidence is cumulative or inconsequential in relation to the strength of the State's case; (3) the frequency of the error; (4) the presence or absence of evidence corroborating or contradicting the erroneously admitted or excluded evidence; (5) the nature of the defense; (6) the circumstances in which the evidence was introduced at trial; (7) whether the court took any curative steps; (8) whether the evidence is of an inflammatory nature; and (9) whether the other evidence of the defendant's guilt is of an overwhelming nature. Id. at ____ (slip op. at 10). No one factor is dispositive. Id. at ____ (slip op. at 10). This court may consider factors not listed above, and not all factors may be implicated in a given case. Id. at ____ (slip op. at 10).

Here, the State has not proven beyond a reasonable doubt that the error in admitting the testimony about the funeral incident did not affect the verdict. The State did not present overwhelming other evidence of the defendant's guilt at trial. See id. at ____ (slip op. at 11) (finding an error harmless where "the alternative evidence of the defendant's guilt was overwhelming"). It offered no physical evidence that corroborated the complainant's testimony, no inculpatory statements by the defendant were introduced, and no witnesses testified that they saw the defendant act inappropriately toward the complainant. Significantly, the defendant's daughter — whom the complainant testified was present for many of the assaults — testified that she never saw the defendant touch the complainant inappropriately. Therefore, as in many sexual assault cases, the trial centered upon the credibility of the complainant. See State v. Racette, 175 N.H. 132, 138 (2022). At numerous points during the trial, the defendant challenged the complainant's credibility. See id. at 139. Notably, during his cross-examination of the complainant, the defendant repeatedly impeached the complainant by drawing out inconsistencies between her testimony at trial and her statements to investigators. "Given that the case was ultimately and essentially a credibility contest between the victim and the defendant, and that the victim's credibility had been attacked by the defense with some success, we are not convinced beyond a reasonable doubt that the erroneously admitted [evidence] did not influence the jury's determination to believe the [complainant] over the defendant." State v. Reynolds, 136 N.H. 325, 329 (1992).

The State nonetheless argues that the error was harmless because the evidence of the funeral incident was inconsequential in relation to the State's other evidence of guilt. See Boudreau, 176 N.H. at ____ (slip op. at 10). Specifically, the State argues that the funeral incident was inconsequential because it was "comparatively innocuous" behavior in relation to the charged assaults, and it is "hard to believe that the jury convicted the defendant of far more serious offenses because it heard testimony about the funeral incident."

We disagree.  Even if assaulting the complainant at the funeral can be fairly characterized as "comparatively innocuous" relative to the charged conduct, as we have described above, evidence of such conduct is nonetheless of an inflammatory nature and could provoke the jury's sense of outrage or instinct to punish.  See id. at ____ (slip op. at 10); Palermo, 168 N.H. at 395.  Indeed, the State asserted in its closing that the funeral incident "br[ought] [the complainant] back to the abuse" she suffered, and argued that the incident showed that the defendant can "get away with" sexual assault "in plain sight."

Further, the manner by which the evidence of the funeral incident was presented at trial made it more likely the jury would rely on it when rendering its verdict.  See Boudreau, 176 N.H. at ____ (slip op. at 10).  The State repeatedly referred to the evidence in its closing argument, see State v. Pelkey, 145 N.H. 133, 137-38 (2000) (error not harmless when "[t]he State specifically addressed [the disputed evidence] in its closing argument, reinforcing its significant prejudicial impact"), and the complainant was questioned at length during direct and cross-examination about the funeral incident, see Boudreau, 176 N.H. at ____ (slip op. at 10).  For these reasons, we conclude that the State has failed to meet its burden to establish beyond a reasonable doubt that the erroneous admission of the testimony did not affect the verdict.  Id. at ____ (slip op. at 9).

Because we conclude that the trial court erred by granting the State's motion to admit evidence of the funeral incident and that the error was not harmless beyond a reasonable doubt, we need not address the defendant's arguments regarding ineffective assistance of counsel.  Any issues that the defendant raised in the notice of appeal, but did not brief, are deemed waived.  State v. Bazinet, 170 N.H. 680, 688 (2018).  We reverse and remand.

Reversed and remanded.

BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred; MACDONALD, C.J., and HICKS, dissented.

**Timothy A. Gudas,
Clerk**

MACDONALD, C.J. and HICKS, J., dissenting.  Because we disagree with the majority's conclusion that the trial court erred by granting the State's pretrial motion to admit evidence of uncharged conduct, we respectfully dissent.

We agree with the majority that we review the trial court's ruling for an unsustainable exercise of discretion and will reverse only if it was clearly

untenable or unreasonable to the prejudice of the defendant's case.  State v. Nightingale, 160 N.H. 569, 573 (2010).  Because the trial court ruled before trial regarding the admissibility of the challenged evidence, we consider only the arguments and evidence presented at the pretrial hearing.  Id.  After review of that evidence, we would hold that the defendant has failed to demonstrate that the trial court unsustainably exercised its discretion.

According to the majority, there was insufficient evidence presented at the pretrial hearing to support the trial court's conclusion that the probative value of the funeral incident was not substantially outweighed by the danger of unfair prejudice.  We agree with the majority that the funeral incident evidence was probative of the important issue of the complainant's credibility.  However, we disagree that "the funeral incident evidence posed a great danger of unfair prejudice" because: (1) it was "similar in nature to the charged offenses"; and (2) the details of the incident were "uniquely inflammatory."

Although the majority characterizes the funeral incident conduct as "analogous to" the charged crimes, we agree with the trial court that comparing the funeral incident with the charged incidents "reveals that while they are similar in kind, they are dissimilar in degree."  As the trial court reasoned, the funeral incident included "a grazing of the breast and squeezing of the buttocks, events [the victim] later described as not 'a big deal,'" while the charged incidents were "far more serious."  The charged incidents included the defendant "engaging in digital penetration of [the victim] and having [her] touch his penis."

We likewise disagree with the majority that the details of the "unique context of the incident" — the defendant's stepfather's funeral — would "likely . . . appeal to a juror's sense of resentment or outrage."  At the pretrial hearing on the motion in limine, defense counsel argued that the context of the evidence was prejudicial because "in the middle of grieving his step-father's passing, the jury is going to be told that . . . [the defendant is] grabbing someone's breast and someone's buttocks."  The trial court observed, however, that "much of what we know about this funeral" came not from evidence but from defense counsel making statements into the record.

Furthermore, the trial court acknowledged that the State had agreed to limit the information about the funeral incident by not discussing the fact that the funeral was for someone in the defendant's family but simply presenting that it was a funeral.  Thus, the court explained, "the State is not going to elicit testimony as to whose funeral it was and why it might be so awful," as the defendant had suggested, but rather the testimony would be limited to how the defendant and the victim "just happened to be at a funeral at the same time . . . and this incident . . . happened."  Under these circumstances, the defendant's argument on appeal that the trial court's ruling would allow "testimony that he

9

sexually assaulted a child at the public funeral of his own stepfather" is not supported by the pretrial record.

In its narrative order following the hearing, the trial court determined that, because the "two sets of acts are dissimilar in degree," that reduced the potential for unfair prejudice. In addition, the court found that while there was "some risk" the funeral incident would have a prejudicial effect, the court intended to issue an appropriate limiting instruction to "diminish or eliminate the danger of unfair prejudice." (Quotation omitted.) Accordingly, the court directed the parties to "submit either a joint proposed instruction or competing proposed instructions to the Court for its review at least thirty (30) days prior to the start of jury selection." It appears that the parties failed to comply, and that, at trial, the defendant never asked the court to give a limiting instruction. Thus, the defendant cannot now complain that no such instruction was given. See State v. Hunter, 132 N.H. 556, 561 (1989) ("It is the obligation of counsel to request instructions limiting the scope of evidence.").

Therefore, we disagree with both reasons posited by the majority in support of its conclusion that the funeral incident evidence posed a great danger of unfair prejudice. The trial court is in the best position to gauge the prejudicial impact of particular testimony, and what steps, if any, are necessary to remedy that prejudice. State v. Clark, 174 N.H. 586, 590 (2021). Accordingly, we give the trial court broad latitude when ruling on the admissibility of potentially unfairly prejudicial evidence. Id. Because the record establishes an objective basis sufficient to sustain the discretionary decision made, the trial court's ruling is not clearly untenable or unreasonable, and we would uphold it. State v. Roy, 167 N.H. 276, 284 (2015); State v. Thomas, 168 N.H. 589, 602 (2016).

Although the defendant also argues that he was denied effective assistance of counsel, that claim has not yet been heard in the trial court. We have emphasized that "ineffectiveness claims are almost always to be resolved in the first instance by the trial court in a collateral proceeding." State v. Thompson, 161 N.H. 507, 532 (2011). Contrary to the defendant's contention, this is not a rare case in which such a proceeding is unnecessary. Accordingly, we would decline to decide this issue without prejudice to the defendant's ability to raise it in a collateral proceeding in the trial court.

For the reasons set forth above, we respectfully dissent.