Hillsborough-northern judicial district
No. 2009-046

THE STATE OF NEW HAMPSHIRE

v.

MICHAEL ADDISON

Argued: June 10, 2010
Opinion Issued: July 20, 2010

*Michael A. Delaney*, attorney general (*Jeffery A. Strelzin*, senior assistant attorney general, & a. on the brief, and *Mr. Strelzin* orally), for the State.

*David M. Rothstein*, deputy chief appellate defender, and *Richard Guerriero*, public defender, of Concord, on the brief, and *Mr. Rothstein* orally, for the defendant.

DALIANIS, J. The defendant, Michael Addison, was convicted by a jury of conspiracy to commit robbery, *see* RSA 629:3 (2007), and armed robbery, *see* RSA 636:1 (2007). He appeals, arguing that the Trial Court (*McGuire*,

J.) erred by informing the jury venire that he had also been charged with the murder of a police officer and by admitting evidence of slang or code conversations between the defendant and his co-conspirator. We affirm.

The record supports the following relevant facts. One morning in October 2006, the defendant and his friends, Antoine Bell-Rogers, Teresia Shipley and Angela Swist, were riding in a car looking for a convenience store to rob. The defendant and Bell-Rogers said that they were "hungry" and that their "ribs were touching," which meant that "they were looking for money . . . or a place to rob." They considered robbing one store in Manchester, but then decided against it because there were people there.

The four traveled through Londonderry to a Cumberland Farms store, where the defendant and Bell-Rogers again said that they were hungry and their ribs were touching. After deciding against robbing the Cumberland Farms and a series of other convenience stores, they stopped at a 7-Eleven store in Hudson where there were no cars in the parking lot. As they made plans to rob the 7-Eleven store, they again repeated their earlier comments. They then entered the store, and the defendant pointed a gun at the clerk while Bell-Rogers took the cash drawer.

The defendant was charged with conspiracy to commit robbery and armed robbery. Before trial, he moved to prohibit the State from introducing the "I'm hungry" and "my ribs are touching" statements. Following an evidentiary hearing, the motion was denied.

On the first day of jury selection, the trial judge began the proceedings by telling the prospective jurors about the charges. She stated: "We're going to be choosing a jury this morning for the case of *The State of New Hampshire versus Michael Addison*. Mr. Addison is charged with one count of conspiracy to commit robbery and one count of armed robbery." The court then gave the following instruction, based upon an instruction given in *State v. VandeBogart*, 136 N.H. 107, 113-15 (1992):

> I will be candid with you and inform you that the defendant in this case . . . has been indicted for the shooting death of Manchester Police Officer Michael Briggs in October 2006. That case has not been tried and so the defendant's guilt or innocence has not been determined. The defendant is presumed innocent of that charge, as he is on the present charges, unless and until the State proves that charge beyond a reasonable doubt. The Briggs[] case is totally unrelated to the present charges and has nothing to do with the defendant's guilt or innocence on these charges.

> The reason I mention the Officer Briggs[] case is that it has garnered much publicity in local newspapers and in local radio and television broadcasts. I assume most of you have read or heard or

seen something about that case, or the charges presently before the Court. The fact that you may have read, heard or seen something about the present charges or the shooting death of Officer Briggs does not in and of itself disqualify you from serving as jurors in this case.

To be a fair and impartial juror does not mean that you must come into the trial with no information or impression about the defendant in this case. To be a fair and impartial juror it is sufficient that you can lay aside your preconceptions, biases or opinions and render a verdict based on the evidence presented in this Court during this trial.

I have been candid with you and it is imperative that you be candid with me. If you feel that you cannot put aside any impression, opinion or biases you may have of this case or this defendant, you must tell me that.

The court gave this instruction (*VandeBogart* instruction) over the defendant's objection. The court then proceeded with *voir dire*, empanelling a jury.

On appeal, the defendant argues that the *VandeBogart* instruction violated his state and federal constitutional rights to a fair trial before an impartial jury. *See* N.H. CONST. pt. I, arts. 15, 17, 35; U.S. CONST. amends. V, VI, XIV. He also argues that the trial court erred by admitting evidence of the slang or code conversations with his co-conspirator. He asserts that these alleged errors entitle him to a new trial.

*I. VandeBogart Instruction*

The defendant argues that the trial court erred by giving the *VandeBogart* instruction to the jury venire because the facts and circumstances in *VandeBogart* differed from those in this case and because *VandeBogart* was based upon flawed reasoning. We disagree. We first address the defendant's claims under the State Constitution, and cite federal opinions for guidance only. *State v. Ball*, 124 N.H. 226, 231, 233 (1983).

"It is a fundamental precept of our system of justice that the defendant has the right to be tried by a fair and impartial jury." *State v. Weir*, 138 N.H. 671, 673 (1994) (quotation omitted). Generally, a juror is presumed to be impartial. *State v. Rideout*, 143 N.H. 363, 365 (1999). When a juror's impartiality is questioned, however, the trial court has a duty to

determine whether the juror is indifferent. *Id.* "[I]f it appears that any juror is not indifferent, [the juror] shall be set aside on that trial." *Weir*, 138 N.H. at 673 (quotation omitted). "[T]he manner in which *voir dire* is conducted is wholly within the sound discretion of the trial judge." *State v. Wamala*, 158 N.H. 583, 594 (2009) (quotation omitted). It is well-settled that whether a prospective juror is free from prejudice is a determination to be made in the first instance by the trial court on *voir dire, State v. Gullick*, 120 N.H. 99, 102, *cert. denied*, 449 U.S. 879 (1980), and that on appeal we will "evaluate the voir dire testimony of the empaneled jury to determine whether an impartial jury was selected." *State v. Laaman*, 114 N.H. 794, 800 (1974), *cert. denied*, 423 U.S. 854 (1975).

In *VandeBogart*, the defendant appealed his conviction for simple assault, claiming that the trial court erred by informing the jury panel during *voir dire* that he had been indicted for first-degree murder. *VandeBogart*, 136 N.H. at 108. The assault charge arose from an incident unrelated to the murder, and the record showed that the murder investigation had received a great deal of media attention, some of which focused upon the defendant and the fact that he was a parolee from Montana who had been convicted of three prior sex offenses. *Id.*

VandeBogart moved for a change of venue or to dismiss the assault charge, arguing that the media coverage surrounding the murder indictment would prevent him from receiving a fair trial on the assault charge and that *voir dire* could not adequately ensure an impartial jury. *Id.* at 109. The trial court denied the motions, and on the first day of jury selection, over the defendant's objection, gave the prospective jurors an instruction similar to the one given by the trial court here. *Id.* We upheld the trial court's decision to give the instruction, framing the issue as "whether the court's decision to inform the entire panel of the defendant's murder indictment and then to question the jurors as to whether they could fairly consider the evidence in the misdemeanor case[] ensured that the jury was impartial." *Id.* at 111. We observed that, in giving the instruction, the *VandeBogart* trial court

> highlighted for the jury the most difficult problem confronting them in terms of their ability to remain impartial. The court was then able to explain to the jury immediately the legal principles they would have to understand and apply in order to ensure that the defendant was afforded a fair trial. By directly referring to pretrial publicity, the court emphatically informed the panel of their duty to be impartial and gave them an opportunity to express any reservations or doubts in this regard.

*Id.* We held that the trial court did not err in conducting *voir dire* by giving the instruction as it did. *Id.* at 111, 115.

■ Our analysis in *VandeBogart* reinforced the principle that the trial court's constitutional duty is to empanel a jury that is capable of being impartial, and that the degree of knowledge each juror may or may not have about unrelated charges is not necessarily determinative of this issue. Here, as in *VandeBogart*, the record indicates that many prospective jurors, as a result of media coverage, had some knowledge of the shooting death of Officer Briggs, the defendant's indictment for that offense, or both. Nevertheless, each of the jurors selected stated under oath that he or she could render a verdict based upon only the evidence presented at trial. The fact that several members of the venire who were not seated admitted that they had already formed an opinion about the robbery charge demonstrates that the trial judge's questions were sufficient to uncover any bias or prejudice among the jurors. *State v. Lister*, 122 N.H. 603, 606 (1982).

■ The defendant claims that our reasoning in *VandeBogart* is flawed because it presumes "that the entire venire has already been broadly exposed to information about the highly publicized case." Similarly, he argues that, by not informing the venire of the murder charge, the trial court could have avoided "tainting" jurors who knew little or nothing about the Briggs case. As noted above, however, the State Constitution requires that an accused receive a trial by a fair and impartial jury. It does not require "that [a] juror be totally ignorant of the facts and issues involved." *Laaman*, 114 N.H. at 800 (quotation omitted). "In these days of swift, widespread and diverse methods of communication, an important case can be expected to arouse the interest of the public in the vicinity and scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case." *Id.* (quotation omitted). "To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard." *Id.* (quotation omitted). "It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." *Id.* (quotation omitted).

■■ The *VandeBogart* instruction in this case was given to determine whether each juror could lay aside impressions or opinions and render a verdict based upon the evidence presented in court. It may have prevented a situation in which, after hearing details about the robbery charge, a seated juror realized that the defendant was the same individual accused of shooting Briggs, thereby potentially requiring a mistrial. "[W]ith respect to

pretrial publicity, we think . . . primary reliance on the judgment of the trial court makes good sense." *State v. Smart*, 136 N.H. 639, 653 (quotation and brackets omitted), *cert. denied*, 510 U.S. 917 (1993). "The judge of that court sits in the locale where the publicity is said to have had its effect, and brings to h[er] evaluation of any such claim of prejudice h[er] own perception of the depth and extent of news stories that might influence a juror." *Id.* (quotation and brackets omitted). Here, we defer to the trial judge's determination that candidness with the venire was the best way to ensure an impartial jury, capable of determining the defendant's guilt or innocence solely upon the evidence before it.

■ We similarly reject the defendant's argument that our reasoning in *VandeBogart* is flawed because it "relies too heavily on jurors' assurances that they can be fair." "The trial court's determination of the impartiality of the jurors selected, essentially a question of demeanor and credibility, is entitled to special deference." *Weir*, 138 N.H. at 673-74 (quotations and ellipsis omitted). Here, the record reveals that the trial judge called all potential jurors to the bench individually to question them about possible bias. While she may have based her decisions in seating jurors in part upon the jurors' assurances, the trial judge was also able to observe each juror's demeanor and make her own determination regarding his or her credibility. Upon the record before us, we cannot say that the trial court unsustainably exercised its discretion in giving the jury the *VandeBogart* instruction.

The Federal Constitution offers the defendant no greater protection than the State Constitution with regard to his claims of error. *Id.*; *Patton v. Yount*, 467 U.S. 1025, 1038-40 (1984). Accordingly, we reach the same result under the Federal Constitution.

## II. Slang or Code Conversations

At trial, Shipley and Swist testified that the defendant and Bell-Rogers used the phrases "I'm hungry" and "my ribs are touching" just before the robbery and that these phrases meant that they were looking for a place to rob. The defendant argues that the trial court erred in admitting these statements as evidence from which the jury could have concluded that he had committed other robberies, because "only seasoned robbers would have developed code words . . . to describe their conduct." This " 'bad character' inference," he contends, prejudiced his defense. Thus, he argues, the trial court erred in failing to exclude the evidence under New Hampshire Rules of Evidence 404(b) and 403.

We accord the trial court considerable deference in determining the admissibility of evidence, and we will not disturb its decision absent an unsustainable exercise of discretion. *State v. Giddens*, 155 N.H. 175, 179

(2007). To demonstrate that the trial court exercised unsustainable discretion, the defendant must show that the ruling was clearly untenable or unreasonable to the prejudice of his case. *Id.*

██ Rule 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Ordinarily, prior to the admission of such evidence, the following three determinations must be made: (1) that the evidence is relevant for a purpose other than character or disposition; (2) that there is clear proof that the defendant committed the prior offenses; and (3) that the prejudice to the defendant does not substantially outweigh the probative value of the evidence. *State v. Martin*, 138 N.H. 508, 518 (1994). Here, however, Rule 404(b) does not apply. The defendant was charged with conspiracy to commit robbery, which required the State to prove that he agreed with one or more persons to commit robbery. *See* RSA 629:3, I. The evidence at issue is direct evidence of the defendant's agreement with Bell-Rogers to commit the robbery, and accordingly, does not constitute evidence of "other crimes, wrongs, or acts." *See Martin*, 138 N.H. at 518; *State v. Kulikowski*, 132 N.H. 281, 287 (1989). "The appropriate test for admissibility in this instance, therefore, is contained in Rule of Evidence 403, which permits the exclusion of relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice." *Martin*, 138 N.H. at 518 (quotation omitted).

 Evidence is unfairly prejudicial if its primary purpose or effect is to appeal to a jury's sympathies, arouse its sense of horror, provoke its instinct to punish, or trigger other mainsprings of human action that may cause a jury to base its decision on something other than the established propositions in the case. *State v. Ainsworth*, 151 N.H. 691, 696 (2005). Unfair prejudice is not, of course, mere detriment to a defendant from the tendency of the evidence to prove guilt, in which sense all evidence offered by the prosecution is meant to be prejudicial. *Giddens*, 155 N.H. at 180. Rather, the prejudice required to predicate reversible error is an undue tendency to induce a decision against the defendant on some improper basis, commonly one that is emotionally charged. *Id.* Among the factors we consider in weighing the evidence are: (1) whether the evidence would have a great emotional impact upon a jury; (2) its potential for appealing to a

juror's sense of resentment or outrage; and (3) the extent to which the issue upon which it is offered is established by other evidence, stipulation or inference. *State v. Howe*, 159 N.H. 366, 378 (2009). "The trial court is in the best position to gauge the prejudicial impact of particular testimony, and what steps, if any, are necessary to remedy that prejudice." *State v. Sonthikoummane*, 145 N.H. 316, 324 (2000) (quotation and brackets omitted). Thus, we give the trial court broad latitude when ruling on the admissibility of potentially unfairly prejudicial evidence. *Id.*

Here, the State offered the evidence at issue to prove that the defendant agreed with Bell-Rogers to commit the robbery. *See* RSA 629:3, I. Their comments to each other, coupled with Swist's and Shipley's explanations, reflected the agreed-upon criminal motives, intent and plans of the defendant and his co-conspirators. The conversations occurred several times during the hours just before the robbery while the four were observing potential places to rob. In short, the evidence was highly probative of the crime charged.

Moreover, its prejudicial effect does not substantially outweigh its probative value. Neither the words "I'm hungry" and "my ribs are touching," nor the witnesses' explanations constitute the type of evidence that would appeal to a jury's sympathies or arouse its sense of horror. While we acknowledge that the defendant could have potentially suffered prejudice by the jury inferring from the code or slang that he was a "seasoned robber," we do not think that any such prejudice substantially outweighs the probative value of the evidence, and we cannot say that the trial court unsustainably exercised its discretion in denying the defendant's motion.

To the extent that the defendant argues that failure to exclude this evidence violated his rights under Part I, Article 15 of the New Hampshire Constitution and the Fifth and Fourteenth Amendments to the United States Constitution, he has not briefed these arguments and, accordingly, we decline to address them. *See State v. Blackmer*, 149 N.H. 47, 49 (2003).

*Affirmed.*

BRODERICK, C.J., and DUGGAN, HICKS, and CONBOY, JJ., concurred.