NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Carroll
No. 2013-290

THE STATE OF NEW HAMPSHIRE

v.

JUSTIN L. ROY

Argued: May 8, 2014
Opinion Issued: January 16, 2015

Joseph A. Foster, attorney general (Stacey R. Kaelin, assistant attorney general, on the brief and orally), for the State.

Sweeney Law Office, of Bedford (Shawn Sweeney on the brief and orally), for the defendant.

BASSETT, J. The defendant, Justin L. Roy, appeals his conviction by a jury on two counts of kidnapping, see RSA 633:1, I(c), II (2007); RSA 633:1, I-a, II (2007), one count of first degree assault, see RSA 631:1, I(d) (2007), four counts of second degree assault, see RSA 631:2, I(c)-(d) (Supp. 2013), one count of criminal restraint, see RSA 633:2 (2007), and two counts of simple assault, see RSA 631:2-a, I(a)-(b) (2007). On appeal, the defendant argues that the Superior Court (Houran and Mangones, JJ.) erred by denying his: (1) motion to suppress evidence obtained from his cellular telephone; (2) motions in limine to both admit and exclude certain evidence; (3) motion to dismiss

during trial based upon the State's alleged failure to timely disclose exculpatory evidence; and (4) subsequent motions to dismiss and for a directed verdict in which he alleged that there was insufficient evidence to convict. We affirm.

I

The jury could have found, or the record supports, the following facts. In December 2011, Heather Downs and three of her children, child 1 (eleven months old), child 2 (two years old), and child 3 (seven years old), lived with the defendant in his mobile home in Albany. The defendant and Downs were in a domestic relationship, but the defendant was neither the father nor the legal guardian of the children.

After dinner on December 18, 2011, the three children fell asleep, and the defendant went outside to his heated shed to work on a lawn mower. More than one person testified that on that night the defendant drank several alcoholic beverages and failed to take his prescription medications to treat his depression and alcoholism. After visiting the defendant in the shed around 10:30 p.m., Downs checked on the children and fell asleep shortly thereafter.

Downs awoke around 2:00 a.m. and discovered that child 2 was no longer inside the mobile home. She went outside and found that child 2 was inside the shed with the defendant. Child 2 was wrapped in a blanket and sleeping in a chair. In response to Downs's request that the defendant bring the child inside, he stated that he would do so in about 20 minutes. Downs then went back inside the mobile home and fell asleep.

Around 4:15 a.m., Downs awoke. She looked outside and noticed that shirts were covering the windows of the shed. Realizing that child 2 was apparently still inside the shed, Downs went outside and knocked on the shed door. Downs testified that when she did this, the defendant held the shed door closed and would not let her in. Thereafter, she saw the defendant rushing from the shed to the mobile home, carrying child 2, who was only wearing a diaper in the below-freezing weather. The defendant put child 2 back in his bed, and Downs fell asleep.

Around 5:00 a.m., the defendant woke everyone in the home by yelling. The defendant screamed at child 1 and squirted both child 1 and Downs with the contents of a bottle. The defendant then went to the couch where child 3 had been sleeping, and he jumped on the child's legs, bruising them. As child 3 tried to get up, the defendant pushed him to the floor, causing the child to injure his head and hand.

Downs then told the defendant that she and the children were leaving. In response, the defendant went to where child 2 was sleeping, grabbed his hand, and flung him to the floor. Child 2 failed to get up off of the floor. The

2

defendant then picked child 2 up, brought him into the bathroom, and commented that the child was "f***ed." At this time, Downs noticed a bruise on child 2's head.

Downs was eventually able to bring the children outside to her car. When she went back inside the home to retrieve some of her and her children's personal belongings, she asked the defendant about the bruise on child 2's head. The defendant replied that child 2 had fallen into the wall of the shed. He also told Downs to "Get your f'ing kids out of here. They're breathing up and taking my air."

Downs put her children in the car and drove away. After making several stops, she drove to her mother's house. While there, Downs noticed that child 2's eyes were rolling back in his head and that he had multiple bruises on his abdomen that she had not seen the day before. She also observed that child 2's rectum was bruised. She then called Memorial Hospital in North Conway and drove to the hospital, arriving there with her children shortly before 8 a.m.

When child 2 was taken into the emergency room, he was unresponsive, with a low body temperature and low blood pressure, and near death. Due to his condition, he was transported by helicopter to Maine Medical Center. Doctors there discovered that child 2 had extensive bruising all over his body, especially in his abdominal area. His pancreas was severely injured, and he had lost approximately half of his blood due to internal bleeding. Part of his bowel was torn, which had caused the contents of his bowel to spill into his abdomen. Doctors performed multiple surgeries on him. During his recovery, he required the use of a feeding tube for 11 months.

Child 2's doctors testified that his injuries were not accidental and that they resulted from more than one blow. One doctor observed that child 2's injuries were more severe than those commonly suffered by professional boxers, and more extensive than the injuries that had been sustained by a child that he had treated who had been involved in a high-speed, head-on car accident. Additionally, a physician-expert testified that all of child 2's injuries were consistent with having occurred within 24 hours of being brought to the hospital.

II

The defendant was charged with multiple counts of assault for his actions involving all three children. He was also charged with multiple counts of kidnapping and criminal restraint stemming from his actions toward child 2. Prior to trial, the defendant filed a motion to suppress evidence obtained as a result of a search of his cell phone that had been conducted pursuant to a search warrant. The trial court denied the motion. The defendant also filed several motions in limine seeking to: (1) exclude text messages obtained from

3

Downs's cell phone and "any reference to [the defendant] taking or ceasing to take prescription medication" and (2) introduce evidence of alleged prior violent acts committed by Downs against her children to show her "as the alternative perpetrator." The trial court denied these motions as well.

During trial, the defendant moved to dismiss the charges because of an alleged Brady violation, based upon the State's failure to timely disclose a sealed motion to continue filed in the pending criminal case against Downs. See Brady v. State of Maryland, 373 U.S. 83, 87 (1963) (requiring the prosecution to disclose material exculpatory evidence to the accused). The trial court denied this motion.

At the close of the State's case, the defendant moved to dismiss all charges, arguing that the State had introduced insufficient evidence to convict. The trial court dismissed two charges, but denied the motion as to the remaining ten charges. After the jury found the defendant guilty on the remaining counts, the defendant moved to set aside the verdicts, renewing his insufficiency claim. The trial court denied the motion, and this appeal followed.

III

The defendant first argues that the trial court erred in denying his motion to suppress text messages found on his cell phone. He contends that the messages should have been suppressed because of the failure of the police to comply with the statutory timing requirements for search warrant returns. See RSA 595-A:7 (2001).

"When reviewing a trial court's ruling on a motion to suppress, we accept the trial court's findings unless they lack support in the record or are clearly erroneous. Our review of the trial court's legal conclusions, however, is de novo." State v. Licks, 154 N.H. 491, 492 (2006) (quotation omitted).

RSA 595-A:7 provides that "[e]very officer to whom a warrant to search is issued shall return the same to the court to which it was made returnable as soon as it has been served, and in any event not later than 7 days from the date of issuance thereof, with a return of his actions thereon." In this case, the original search warrant for the defendant's cell phone was issued on December 22, 2011. On December 28, 2011, the State moved for a 30-day extension to file the warrant's return, which the court granted. The return was not made until January 31, 2012.

The defendant asserts that the police violated RSA 595-A:7 by exceeding the seven-day statutory time limit to return the warrant. He argues that, because the statute does not provide for an extension of the deadline – unlike a similar statute governing administrative warrants – the 30-day extension was

4

invalid.  <u>Compare</u> RSA 595-A:7 (containing no provision allowing for an extension beyond seven days) <u>with</u> RSA 595-B:4 (2001) (requiring an administrative warrant to be returned "in any event not later than 7 days from the date of its issuance, unless extended or renewed by the justice . . . who signed and issued the original warrant, upon satisfying himself that such extension or renewal is in the public interest").  The defendant further argues that, even if the extension was lawful, the search of his phone was illegal because the warrant return was not made until after the extension had expired.  Thus, he contends that the trial court should have suppressed the text messages derived from the search of the phone.

We need not decide whether a court has the power to grant an extension of a search warrant return because we agree with the defendant that the police violated RSA 595-A:7 by returning the warrant after the deadline.  However, we reject the defendant's argument that suppression is required.

We first observe that the legislature has not seen fit to require the exclusion of evidence based upon noncompliance with the technical requirements of RSA 595-A:7.  <u>Cf.</u> <u>State v. Saide</u>, 114 N.H. 735, 737-38 (1974) (explaining that, unlike in other statutes, the legislature has not provided for the exclusion of evidence for violations of RSA 595-A:5).  This stands in contrast with the explicit directives in other statutes.  For example, in the motor vehicle context, failure to comply with the requirements of RSA chapter 265-A renders the results of alcohol concentration tests inadmissible.  <u>See</u> RSA 265-A:5, IV (2014).

Additionally, we have repeatedly "held that technical violations of RSA chapter 595-A do not require suppression of the items seized."  <u>State v. Brown</u>, 125 N.H. 346, 351 (1984); <u>see</u> <u>State v. Huffman</u>, 154 N.H. 678, 682 (2007); <u>State v. Sands</u>, 123 N.H. 570, 606 (1983); <u>State v. Gilson</u>, 116 N.H. 230, 234 (1976); <u>Saide</u>, 114 N.H. at 737-38.  Had we misconstrued the statute, the legislature presumably would have amended it in the 40 years since <u>Saide</u>; because the legislature has not, we assume that our interpretation conforms to legislative intent.  <u>See</u> <u>Ichiban Japanese Steakhouse v. Rocheleau</u>, 166 N.H. ___, ___ (decided November 13, 2014) (assuming that our interpretation of a statute conformed to legislative intent because legislature had not amended the statute in the 16 years following the decision).

Here, the police violated RSA 595-A:7 by failing to return the warrant in a timely fashion.  Notably, the only challenge that the defendant makes to the search warrant itself or the evidence obtained pursuant to that warrant relates to the untimely warrant return.  Because we conclude that the late return is merely a technical violation of RSA 595-A:7, suppression of the evidence obtained from the defendant's cell phone is not required.  <u>See</u> <u>Saide</u>, 114 N.H. at 737-38.

We further note that, although the defendant alleges that the untimely warrant return violates his "due process rights," he has failed to develop this argument sufficiently for our review. See State v. Young, 159 N.H. 332, 337 (2009). Accordingly, we need not address whether, and under what circumstances, due process may require suppression of evidence based upon noncompliance with the statute.

Finally, we invite the legislature to revisit the requirements set forth in RSA 595-A:7. As currently written, the statute fails to authorize extensions of warrant returns. See RSA 595-A:7. Explicitly empowering courts to grant extensions beyond the current seven-day statutory return period would make RSA 595-A:7 consistent with the statute governing returns of administrative warrants. See RSA 595-B:4 (allowing the court to extend the return of inspection warrants beyond the seven-day period if the extension "is in the public interest"). Moreover, it would lessen the burden on law enforcement and the criminal justice system in general by providing greater flexibility as to warrant return dates.

IV

The defendant next argues that the trial court erred by denying his pretrial motion in limine to exclude several text messages contained on the cell phone of Downs. He contends that the trial court erred in failing to exclude the text messages pursuant to New Hampshire Rules of Evidence 403 and 404(b). We disagree.

"The decision to admit or exclude evidence is within the discretion of the trial court." State v. Furgal, 164 N.H. 430, 438 (2012) (quotation omitted). "In determining whether a ruling is a proper exercise of judicial discretion, we consider whether the record establishes an objective basis sufficient to sustain the discretionary decision made." Id. (quotation omitted). "To show an unsustainable exercise of discretion, the defendant must demonstrate that the trial court's ruling was clearly untenable or unreasonable to the prejudice of his case." Id. (quotation omitted).

At trial, the State offered into evidence three text messages that were sent to Downs by the defendant. The first, sent on December 9, 2011, stated, "I'm done helping you raise your retarded f***ing a**holes. The smart thing to do would have been to drown them at birth. They are f***ed up for life." The second, sent on December 13, 2011, stated, "Yes, I think all your kids are ugly. Don't mean I didn't love them. Yes, I think . . . [child 2] will be a faggot and [child 3] will be a pedophile or [a] rapist. Your kids are f***ed up. Calling it right." The final text was sent at about noon on December 19, 2011, when Downs was at the hospital with her children, in which the defendant wrote, "What's going on? I didn't do nothing or hurt no one."

6

In denying the defendant's motion to exclude these text messages, the trial court determined that the text messages were probative of the defendant's state of mind, and that, given the "allegations of severely abusive conduct" in this case, presenting them to the jury was not "unduly inflammatory" so as to require suppression pursuant to Rule 403.

On appeal, the defendant maintains that all three text messages should have been excluded pursuant to Rule 403. See N.H. R. Ev. 403. He asserts that the probative value of the text messages is substantially outweighed by the danger of unfair prejudice because the "primary purpose or effect" of the text messages was to "arouse the jurors' sense of horror and provoke their instinct to punish," which is prohibited by Rule 403. In response, the State argues that the defendant has "failed to show the [court's] rulings were clearly untenable or unreasonable." See Furgal, 164 N.H. at 438. We agree with the State that the defendant has failed to satisfy his burden.

Rule 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." N.H. R. Ev. 403. "Evidence is unfairly prejudicial if its primary purpose or effect is to appeal to a jury's sympathies, arouse its sense of horror, provoke its instinct to punish, or trigger other mainsprings of human action that may cause a jury to base its decision on something other than the established propositions in the case." State v. Addison, 160 N.H. 493, 501 (2010). "Unfair prejudice is not, of course, mere detriment to a defendant from the tendency of the evidence to prove guilt, in which sense all evidence offered by the prosecution is meant to be prejudicial." Id. "Rather, the prejudice required to predicate reversible error is an undue tendency to induce a decision against the defendant on some improper basis, commonly one that is emotionally charged." Id. "The trial court is in the best position to gauge the prejudicial impact of particular testimony, and what steps, if any, are necessary to remedy that prejudice." Id. at 502 (quotation omitted). "Thus, we give the trial court broad latitude when ruling on the admissibility of potentially unfairly prejudicial evidence." Id.

Here, the defendant was charged with, among other crimes, kidnapping and first degree assault. One of the kidnapping charges required proof that the defendant acted with a purpose to terrorize child 2, see RSA 633:1, I(c), and the first degree assault charge required proof that the defendant "recklessly" caused serious bodily injury to child 2, see RSA 631:1, I(d). "A person acts purposely with respect to a material element of an offense when his conscious object is to cause the result or engage in the conduct that comprises the element." RSA 626:2, II(a) (2007). "A person acts recklessly with respect to a material element of an offense when he is aware of and consciously disregards

7

a substantial and unjustifiable risk that the material element exists or will result from his conduct." RSA 626:2, II(c) (2007).

The first two text messages, which were sent within a few days of the incident, are probative of the defendant's hostile feelings for the children. The text messages, therefore, made it more probable than it would have been without them, see N.H. R. Ev. 401, that the defendant acted with a "purpose to terrorize" child 2 pursuant to the kidnapping charge, and to purposely and, consequently, "recklessly" cause serious bodily injury to child 2 pursuant to the assault charge. See RSA 626:2, III (2007) (stating that "[w]hen recklessness suffices" to establish an element of an offense, "the element is also established if the person acts purposely or knowingly"); see also State v. Bathalon, 146 N.H. 485, 489 (2001) (explaining that if the defendant acted "purposely or knowingly, the defendant was by definition acting recklessly"). Although the first two text messages may be prejudicial, given the nature of the crimes charged, we conclude that the defendant has failed to establish that their probative value was substantially outweighed by the danger of unfair prejudice. See N.H. R. Ev. 403; State v. Hood, 131 N.H. 606, 608-09 (1989) (affirming trial court's decision pursuant to Rule 403 to admit, in a sexual assault case, pictures "show[ing] naked individuals obviously intending to be provocative" because pictures were not "significantly inflammatory" and jury was unlikely "to be much affected by seeing merely indecorous depictions of human nakedness"). Therefore, the trial court's admission of these text messages was sustainable.

As to the third text message, the defendant offers no developed argument regarding its relevancy, and, instead, focuses on whether it is barred by Rule 403. Therefore, we deem any argument concerning the third text's relevancy to be waived, and we turn to the Rule 403 analysis. See State v. Fernandez, 152 N.H. 233, 239-40 (2005) (noting that an undeveloped legal argument "is insufficient to warrant judicial review"). Unlike the first two text messages, we conclude that the benign third text message suggests no unfair prejudice. Therefore, the defendant has failed to show that the trial court's ruling was clearly untenable or unreasonable.

The defendant next argues that the text messages should have been excluded under Rule 404(b) as inadmissible propensity evidence. See N.H. R. Ev. 404(b). The State again counters that the defendant failed to satisfy his burden of showing that the trial court's admission of the text messages under Rule 404(b) was an unsustainable exercise of discretion. See Furgal, 164 N.H. at 438.

Rule 404(b) states that:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in

8

conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

N.H. R. Ev. 404(b). "To ensure that this rule is followed, we have held that before a trial court admits 'other crimes, wrongs, or acts' evidence pursuant to Rule 404(b), it generally must first determine: (1) that the evidence is relevant for a purpose other than character or disposition; (2) that there is clear proof that the defendant committed the prior act; and (3) that the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice to the defendant." State v. Belonga, 163 N.H. 343, 359 (2012).

Although we have considerable doubt as to whether the timing and content of the third text message are such that it can be properly considered to be a "prior bad act," because the defendant argues that all three text messages are prior bad acts, we will assume without deciding that the three text messages constitute prior bad acts for the purpose of the Rule 404(b) analysis. See State v. Pepin, 156 N.H. 269, 275-79 (2007) (analyzing a verbal threat under Rule 404(b)). As to the first prong, whether the text messages are relevant for a purpose other than character or disposition, see Belonga, 163 N.H. at 359, the trial court determined that they were relevant to the defendant's state of mind and intent to commit the charged offenses. The defendant offers no developed argument under the first prong of the 404(b) test as to the third text message; accordingly, we deem any such argument waived and confine our analysis under the first prong to the first two text messages. See Fernandez, 152 N.H. at 239-40.

"To be relevant to intent, evidence of other bad acts must be able to support a reliable inference, not dependent on the defendant's character or propensity, that the defendant had the same intent on the occasions of the charged and uncharged acts." Pepin, 156 N.H. at 277 (quotation omitted). "We will find sufficient support for a reliable inference of intent only if the defendant's intent in committing other bad acts and the defendant's intent in the charged offenses [are] closely connected by logically significant factors." Id. (quotation omitted).

As previously noted, the defendant was charged with, among other crimes, kidnapping, which required proof that the defendant acted with a purpose to terrorize child 2, see RSA 633:1, I(c), and first degree assault, which required proof that the defendant "recklessly" caused serious bodily injury to child 2, see RSA 631:1, I(d). The first two text messages were sent within days of the incident, and they demonstrated the defendant's antipathy toward the children. Accordingly, admission of the text messages made it more probable than it would have been without the text messages, see N.H. R. Ev. 401, that the defendant acted with a purpose to terrorize child 2 and to purposely and, thus, recklessly cause child 2 serious bodily injury. See Pepin, 156 N.H. at

9

278; see also Bathalon, 146 N.H. at 489 (explaining that, if he acted purposely, "the defendant was by definition acting recklessly"). We conclude that the defendant's intent in sending the two text messages and in committing the charged offenses are "closely connected by logically significant factors," Pepin, 156 N.H. at 277 (quotation omitted), and, therefore, that the trial court's ruling that the text messages were relevant to demonstrate the defendant's intent was neither unreasonable nor untenable.

Because the defendant does not dispute that there was sufficient proof that he wrote and sent all three text messages, we need not apply the second prong of the test, and we turn directly to the third prong. See Belonga, 163 N.H. at 359. The third prong requires that the probative value of the evidence not be substantially outweighed by the danger of unfair prejudice to the defendant. Id. This prong involves the same analysis as that conducted pursuant to Rule 403. See State v. Lamprey, 149 N.H. 364, 370 (2003) ("The third prong incorporates the standards of New Hampshire Rule of Evidence 403 requiring a showing of unfair prejudice."). We, therefore, reach the same conclusion as we did when analyzing the issue under Rule 403, which is that the defendant has failed to establish that the probative value of the text messages was substantially outweighed by the danger of unfair prejudice. Accordingly, we hold that the defendant has not shown that the trial court's decision to admit the three text messages under Rule 404(b) was an unsustainable exercise of discretion.

In addition to his challenge to the admission of the text messages, the defendant also protests the admission of "evidence regarding the defendant's depression medication, alcoholism treatment . . . and arrest on an unrelated warrant." However, he fails to adequately develop his legal argument regarding this additional evidence; accordingly, we have confined our analysis to the text messages. See State v. Blackmer, 149 N.H. 47, 49 (2003) (stating that a mere laundry list of complaints regarding adverse rulings by the trial court, without developed legal argument, is insufficient to warrant judicial review).

V

The defendant next argues that the trial court erred by denying his motion in limine to allow "evidence showing that Downs had previously inflicted a pattern of physical abuse and neglect on the child victims." The defendant sought to cross-examine Downs about her allegedly slapping and kicking her children on prior occasions, her alleged admission "to physically striking her children beyond what would be considered acceptable discipline," her alleged bragging about being thrown out of stores because of the way she treated her children, and her pending neglect charges. The defendant asserts that the trial court's decision to exclude this "impeachment evidence" violated his state and federal constitutional rights to "compulsory process," to "present all proofs favorable," to "confront his accuser," and to due process and a fair

10

trial.  See N.H. CONST. pt. I, art. 15; U.S. CONST. amends. V, VI, XIV.  We first address the defendant's claims under the State Constitution and rely upon federal law only to aid our analysis.  State v. Ball, 124 N.H. 226, 231-33 (1983).

On appeal, the defendant contends that the trial court's refusal to allow the defendant to cross-examine Downs about her prior alleged treatment of the children violated his rights to compulsory process and to present all favorable proofs.  The defendant argues only that he was denied the ability to cross-examine Downs about certain subject matter, and he does not contend that he was prevented from producing any witnesses at trial.  Because "[b]oth the Compulsory Process Clause of the Federal Constitution and the right to produce all favorable proofs under Part I, Article 15 [of the New Hampshire Constitution] give a defendant only the right to produce witnesses, not to produce their testimony," State v. Graf, 143 N.H. 294, 296 (1999), we conclude that the trial court did not violate the defendant's rights to compulsory process and to produce all favorable proofs.

We next address the defendant's contention that, by preventing him from cross-examining Downs about her alleged abusive behavior towards her children, the trial court violated his constitutional right to confront witnesses.  "Though fundamental, a defendant's right to cross-examine prosecution witnesses is not unfettered."  State v. Spaulding, 147 N.H. 583, 588 (2002).  "It does not entitle the defendant to introduce evidence in violation of the rules of evidence.  Therefore, a judge may exclude a witness's testimony on evidentiary grounds."  Id. (citation omitted).  "While the trial court may not completely deny a defendant the right to cross-examine a witness, it possesses broad discretion to limit the examination's scope on improper matters of inquiry."  Id.  "We will not reverse the trial court's decision limiting the scope of cross-examination absent an unsustainable exercise of discretion."  Id. at 589.  "To show that the trial court's decision is not sustainable, the defendant must demonstrate that the court's ruling was clearly untenable or unreasonable to the prejudice of his case."  Id.

Here, the trial court evaluated the proffered evidence and determined that it was inadmissible propensity evidence pursuant to Rule 404(b).  See N.H. R. Ev. 404(b).  The court stated:

Although the evidence [the defendant] wishes to present does touch on Downs's treatment of her children and [child 2], there is no link between such evidence and the assault at question.  The timing of most of the acts is unclear, and also unclear is which acts were directed at [child 2] . . . .  Further, there is no indication that the alleged acts come close to approaching the charged acts in severity.  The only manner such evidence becomes relevant is through the inference that because of [Downs's] bad character as a mother, she is more likely to have

11

perpetrated the assault at question. This is precisely the type of propensity evidence inadmissible under [Rule] 404(b).

We agree with the trial court that Rule 404(b) applies to alternative perpetrator evidence such as the evidence at issue here. We also agree with the trial court's analysis and conclusion. Accordingly, we conclude that the defendant has failed to demonstrate that the trial court's ruling was clearly untenable or unreasonable.

Turning to the defendant's due process argument, the defendant asserts that by excluding the evidence about Downs's treatment of the children, while simultaneously "allowing in a slate of negative background information about the defendant," the trial court violated his right to a fair trial. We do not find this argument persuasive, and we conclude that it does not warrant further discussion. See Vogel v. Vogel, 137 N.H. 321, 322 (1993).

To the extent that the defendant attempts to assert a distinct and additional argument concerning his right "to present a complete defense," we decline to address it because the argument was not sufficiently developed for appellate review. See State v. Fortier, 146 N.H. 784, 792 (2001).

Because, under these circumstances, the Federal Constitution offers the defendant no greater protection than does the State Constitution, see State v. White, 163 N.H. 303, 312-13 (2012) (addressing due process); Spaulding, 147 N.H. at 588 (addressing the rights to present all favorable proofs and to confront witnesses); State v. Adams, 133 N.H. 818, 826 (1991) (addressing compulsory process), we reach the same result under the Federal Constitution as we do under the State Constitution.

VI

The defendant next argues that the trial court erred by denying the motion to dismiss in which he alleged a Brady violation. See Brady, 373 U.S. 83. Brady requires the prosecution to disclose material exculpatory evidence to the accused. Id. at 87. The defendant maintains that, until the fourth day of trial, the State "intentionally concealed" from him a sealed motion to continue that had been filed in the pending criminal case against Downs and referenced Downs's agreement with prosecutors. The defendant asserts that, pursuant to Brady, the sealed motion should have been turned over to him earlier to aid in his trial preparation as Downs's "credibility was the primary issue at trial." He further argues that, because the motion was not disclosed until the middle of trial, dismissal of the charges was warranted.

As we have stated, "relief for a Brady violation requires proof that the violation somehow caused [the defendant] prejudice." State v. Colbath, 130 N.H. 316, 320-21 (1988). "Actual prejudice exists if the defense has been

12

impeded to a significant degree by the nondisclosure." State v. Stickney, 148 N.H. 232, 236 (2002).

Assuming, without deciding, that the sealed motion to continue was exculpatory material that should have been disclosed to the defense earlier, we conclude that the trial court did not err in denying the defendant's motion to dismiss because the defendant has failed to demonstrate prejudice. See id. Although the defendant first became aware of the sealed motion during trial, the court allowed him several hours to review the motion prior to oral argument on the matter. Additionally, the defense obtained the motion before the testimony of Downs and was able to cross-examine her about her agreement with the prosecution, thereby challenging her credibility. See State v. Stowe, 162 N.H. 464, 467 (2011) (explaining that cross-examination provides the defendant with an opportunity to impeach a witness's credibility and expose possible biases of the witness). The record does not establish that the initial nondisclosure "impeded to a significant degree" the defendant's case; therefore, we conclude that the trial court did not err in denying the defendant's motion to dismiss. See Stickney, 148 N.H. at 236.

VII

Finally, the defendant contends that the trial court erred in denying his motions to dismiss and for a directed verdict. In both motions, the defendant argued that the State failed to produce sufficient evidence to convict him of the charges. Although on appeal the defendant broadly asserts that the "State [has] failed to sustain its burden of proof" on all charges, his appellate briefs contain developed arguments challenging only the trial court's ruling on the sufficiency of the evidence as to the two kidnapping charges. To the extent that the defendant seeks to make a sufficiency argument as to the other charges, the argument has been insufficiently developed for our review. Accordingly, we address the sufficiency argument with regard to only the kidnapping charges. See Young, 159 N.H. at 337 (declining to address an insufficiently developed argument).

"When considering a challenge to the sufficiency of the evidence, we objectively review the record to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, considering all the evidence and all reasonable inferences therefrom in the light most favorable to the State." State v. Germain, 165 N.H. 350, 354-55 (2013) (quotation omitted). "It is the defendant who bears the burden of demonstrating that the evidence was insufficient to prove guilt." Id. at 355 (quotation omitted). "In reviewing the evidence, we examine each evidentiary item in the context of all the evidence, not in isolation." Id. (quotation omitted). "Further, the trier may draw reasonable inferences from facts proved and also inferences from facts found as a result of other inferences, provided they can be reasonably drawn therefrom." Id. (quotation omitted).

13

"Circumstantial evidence may be sufficient to support a finding of guilty beyond a reasonable doubt." Id. (quotation omitted).  However, "[t]o prevail on a sufficiency of the evidence challenge when the evidence as to one or more elements of the charged offense is solely circumstantial, the defendant must establish that the evidence does not exclude all reasonable conclusions except guilt." Id. at 361.  "The proper analysis is not whether every possible conclusion consistent with innocence has been excluded, but, rather, whether all reasonable conclusions based upon the evidence have been excluded." Id. "The court does not determine whether another possible hypothesis has been suggested by defendant which could explain the events in an exculpatory fashion." Id. (quotation and brackets omitted).  "Rather, the reviewing court evaluates the evidence in the light most favorable to the prosecution and determines whether the alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt." Id. at 361-62 (quotation omitted).

"To succeed on his motion to set aside the verdict, the defendant has the burden of establishing that the evidence, viewed in its entirety and with all reasonable inferences drawn in favor of the State, was insufficient to prove beyond a reasonable doubt that he was guilty of the crime charged." State v. Fandozzi, 159 N.H. 773, 782 (2010) (quotation omitted).  "Given that this standard is the same as that applied in reviewing the denial of the motion[] to dismiss, we address the defendant's arguments concurrently." Id.

The defendant argues that the evidence presented on the two kidnapping charges was insufficient to support a finding of guilty beyond a reasonable doubt.  Specifically, he contends that there was no evidence showing that the defendant "confined [child 2] with the specific purpose to terrorize him" or that he intended to conceal the child from Downs, as required by statute. See RSA 633:1, I(c), II; RSA 633:1, I-a, II.  He also asserts that, given the circumstantial evidence presented at trial, it "is an entirely rational conclusion that Downs inflicted the injuries on [child 2] . . . and pointed to [the defendant] to shield herself from blame when the police arrived."

However, the evidence belies the defendant's assertions.  First, the text messages from Downs's phone, in which the defendant referred to child 2 as a "retarded f***ing a**hole[]" and a "faggot" who should have been "drown[ed] . . . at birth," demonstrated the defendant's hostility towards child 2.  The evidence also showed that the defendant remained alone in the shed with child 2 for several hours during the night of the incident.  Downs further testified that the defendant had covered up the shed's windows with shirts and held the shed door shut when she tried to enter.  Downs also testified that child 2 had not been injured before being taken to the shed and that she first noticed bruising on his head after the defendant brought him back inside the mobile home.  Additionally, doctors testified that child 2 suffered extensive injuries as a result of multiple, non-accidental blows.  Finally, although there was evidence that

14

Downs drove with the children to several locations after leaving the defendant and before going to the hospital, there was no evidence indicating that she harmed the children during that interval.

Given all the evidence, viewed in a light most favorable to the State, the jury could reasonably have concluded that the defendant, and not Downs, was responsible for kidnapping child 2 and severely beating him inside the shed. In particular, the text messages, combined with both the fact that the defendant was alone for hours with child 2 in the shed and that child 2's grave injuries resulted from repeated blows, support the conclusion that the defendant caused child 2's injuries and confined child 2 in the shed with a purpose to terrorize him. See State v. Fuller, 147 N.H. 210, 213 (2001) (noting that "in order for a jury to conclude that a defendant had a purpose to terrorize, the jury must conclude that the defendant had a purpose to cause extreme fear"); see also RSA 633:1, I(c), II. The testimony regarding shirts covering the shed's windows, and regarding the defendant physically preventing Downs from entering the shed by holding the door closed, demonstrate that the defendant acted with the requisite intent to conceal child 2 from his mother. See RSA 633:1, I-a, II. Finally, given the timing of events, Downs's discovery of bruising on child 2's head, and the lack of evidence indicating that Downs harmed the children that night, the only rational conclusion is that the defendant, and not Downs, was responsible for the charged crimes. See Germain, 165 N.H. at 361.

Considering the totality of the evidence, we conclude that the defendant has not met his burden to demonstrate that no rational trier of fact, viewing the evidence in the light most favorable to the State, could have found guilt on the two kidnapping charges beyond a reasonable doubt. Having reviewed the trial transcript, we conclude that the jury could have excluded all reasonable conclusions other than the defendant's guilt on the two kidnapping offenses.

Affirmed.

DALIANIS, C.J., and HICKS, CONBOY, and LYNN, JJ., concurred.

15