NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports.  Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by e-mail at the following address: reporter@courts.state.nh.us.  Opinions are available on the Internet by 9:00 a.m. on the morning of their release.  The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Rockingham
No. 2018-0441


THE STATE OF NEW HAMPSHIRE

v.

JAMES CASTINE

Submitted: June 18, 2019
Opinion Issued: August 21, 2019


Gordon J. MacDonald, attorney general (Sean R. Locke, assistant attorney general, on the brief), for the State.


David M. Rothstein, deputy director public defender, of Concord, on the brief, for the defendant.


LYNN, C.J.  The defendant, James Castine, appeals his convictions and sentences following a jury trial in the Superior Court (Delker, J.) on three counts of sale of a controlled drug.  See RSA 318-B:2, I (2017).  On appeal, the defendant challenges: (1) the sufficiency of the evidence to support his convictions; and (2) the trial court's consideration at sentencing of evidence that he was the leader of a drug enterprise.  We affirm.

The jury could have found the following facts based upon the evidence at trial and all reasonable inferences drawn therefrom. In early 2017, a sheriff's deputy with the Rockingham County Drug Task Force entered into a cooperation agreement with an individual who had been arrested for possessing heroin. This confidential informant (CI) told the deputy that he could purchase heroin from the defendant. The CI agreed to conduct three controlled drug buys from the defendant.

All three drug buys, which occurred on separate days, were executed in the same fashion. First, the CI arrived at the Epping police station and met with the deputy and other law enforcement officers. At their direction, the CI, using his cellphone, called the defendant and requested the purchase of a set quantity of drugs from him at the defendant's residence, which was a garage. Following the cellphone call, the deputy searched the CI and his vehicle. After confirming that neither money nor drugs were on the CI or in his car, the deputy gave the CI the money he needed to purchase the drugs.[1] The CI then drove from the police station to the defendant's residence, followed by the deputy in another car. Once at the defendant's residence, the CI exited his car and entered the garage through a side door. The deputy, who was located nearby, witnessed the CI exit his car and enter the garage. Two other law enforcement officers watched from across the street.

After entering the garage, the CI asked the defendant for the drugs he had requested. The defendant weighed and packaged the drugs, and handed them to the CI, who gave the defendant the money that had been supplied to him by law enforcement. Two other individuals, a male and a female, were present when the first two sales took place. During the third sale, only the female was present.

After the exchange, the CI entered his car and called the deputy to tell him that he had the drugs. Next, the CI drove to the Epping police station, followed by the deputy. Once at the police station, the deputy collected the drugs from the CI and searched both the CI and his car. After the deputy confirmed that there were no additional drugs or money on the CI or in his car, the CI related to the deputy what had happened inside the garage. The drugs purchased from the defendant were tested, and all three samples were determined to contain a mixture of fentanyl and cocaine. Both the CI and the deputy testified that they were unable to differentiate between heroin and fentanyl.

---

[1] For the third buy, the deputy also set up the CI's cellphone to audio record the transaction. However, the recording was inaudible.

After hearing testimony from the CI, the deputy, and the criminalist who tested the drugs, the jury found the defendant guilty on all three counts. At sentencing, the trial court imposed two consecutive stand-committed sentences of seven-and-a-half to 15 years on the first two drug convictions, and a consecutive suspended sentence of seven-and-a-half to 15 years on the third drug conviction. This appeal followed.

II

We first address the defendant's argument that the State presented insufficient evidence to prove his guilt beyond a reasonable doubt. Our standard of review of sufficiency claims is well established. "When considering a challenge to the sufficiency of the evidence, we objectively review the record to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, considering all the evidence and all reasonable inferences therefrom in the light most favorable to the State." State v. Roy, 167 N.H. 276, 292 (2015) (quotation omitted). It is the defendant who bears the burden of demonstrating that the evidence was insufficient to prove guilt. Id. Where, as here, the State presents both direct and circumstantial evidence of guilt, "a sufficiency challenge must fail if the evidence, including the jury's credibility determinations, is such that a rational trier of fact could find guilt beyond a reasonable doubt, even if the evidence would support a rational conclusion other than guilt if the jury had resolved credibility issues differently." State v. Saunders, 164 N.H. 342, 351 (2012). "The evaluation of witness credibility and the weight given to witnesses' testimony [are] issues for the jury to resolve." State v. Oakes, 161 N.H. 270, 276 (2010) (quotation omitted).

Viewing the evidence and all reasonable inferences drawn therefrom in the light most favorable to the State, we hold that the evidence was sufficient for a rational trier of fact to have found, beyond a reasonable doubt, that the defendant was guilty of selling a controlled drug on three occasions. See Roy, 167 N.H. at 292. Here, the jury heard evidence that, on three occasions, the CI requested heroin from the defendant and that law enforcement provided the CI with the money to purchase the heroin. The jury also heard the CI's testimony that, on three occasions, he met with the defendant to complete the drug purchases and, on those occasions, the defendant gave the CI drugs in exchange for the money supplied to the CI by law enforcement. Finally, the criminalist testified that the drugs purchased from the defendant tested positive for fentanyl and cocaine. Based upon this evidence and all reasonable inferences to be drawn therefrom, viewed in the light most favorable to the State, we conclude that a rational trier of fact could have found, beyond a reasonable doubt, that the defendant sold a controlled drug to the CI on three occasions.

3

The essence of the defendant's argument is that the evidence was insufficient because the CI was the only witness who testified that the defendant sold him drugs on the three occasions at issue. The defendant asserts that one or the other of two individuals, who were present when the transactions occurred, could have made the sales. He notes that one of these individuals had a prior arrest record, and the other was on a list of targeted dealers known to the police. He further suggests that the CI became an informant because he "hoped to save himself" by reducing or eliminating his own liability for criminal conduct, and that, because the defendant "was at the top of the Task Force's list" of targeted dealers, the CI understood that naming the defendant as the seller was the "best chance of avoiding his own drug charges." The defendant also contends that the Task Force officers themselves doubted the CI's veracity, which is why, he theorizes, they decided, after the first two sales, to audio record the third sale.

The short answer to all of these arguments is that, although they may have provided fruitful fodder for cross-examination of the State's witnesses and argument to the jury, they fail to demonstrate, as a matter of law, that a rational fact finder could not have found the evidence sufficient to prove the defendant's guilt beyond a reasonable doubt. See Oakes, 161 N.H. at 276 (stating that the evaluation of witness credibility and the weight given to witnesses' testimony are issues for the jury).

III

The defendant next argues that the trial court erred in considering the evidence related to his alleged status as a "drug enterprise leader," RSA 318-B:2, XII (2017); see RSA 318-B:26, VI (2017), in imposing sentence.

In a sentencing memorandum filed prior to the sentencing hearing, the State referenced the defendant's criminal history, including a pending case charging him with two counts of being a drug enterprise leader. The State explained that the defendant was "utiliz[ing] a number of individuals or 'runners' to buy drugs in Massachusetts, transport drugs, and sell drugs on his behalf and/or at his behest." The memorandum identified seven individuals as "runners" for the defendant, and 36 individuals who purchased drugs from or through him.

Based on this memorandum, the State argued at sentencing that the defendant not only conducted the three controlled drug sales for which he was convicted, but also that he was connected with an "extensive network" of individuals who assisted him in purchasing and distributing drugs. With the aid of a flow chart, the State described how the defendant enlisted others to both buy and sell drugs. The State explained that the defendant recruited addicts to purchase drugs out of state and transport them to his residence. According to the State, the defendant instructed these individuals as to the

4

quantity of drugs to purchase, where to go, and from whom to buy the drugs, and also provided money for the purchases.

In addition, upon accessing the defendant's Facebook account pursuant to a search warrant, the State discovered that he used this account, along with other methods, to contact potential buyers. The State explained that the individuals used Facebook to reach out to the defendant, or someone who sold drugs for him, with requests for specific quantities of drugs. After receiving such a request, the defendant set the price, supplied an individual with the drugs, and sent that individual to sell the drugs to the buyer. As he did with his purchasers, the defendant informed the seller of the identity of the buyer, where to go, what quantity to sell, and the amount to get for payment. If the buyer did not have the necessary payment, the seller did not have the authority to sell to the buyer without first obtaining approval from the defendant. The State further explained that proceeds from the sales went directly to the defendant.

The State described how the individuals who worked for the defendant were generally addicts, and that, to evade law enforcement, he paid them in drugs. This arrangement also allowed the defendant to withhold drugs if someone did not perform as instructed. The State further explained that the defendant sold drugs to certain buyers knowing that they had recently overdosed, and that, in the past, he had traded drugs for firearms and sex. In addition, the State noted that an individual to whom the defendant had recently sold drugs died in a car accident with heroin in her system.

On appeal, the defendant argues that the trial court should not have considered the evidence presented by the State that suggested a drug scheme beyond the three buys made by the CI. Trial courts have broad, but not unlimited, discretion in determining the evidence to be considered at a sentencing hearing, State v. Willey, 163 N.H. 532, 541 (2012), and we generally review their sentencing decisions using the familiar unsustainable exercise of discretion standard, State v. Lambert, 147 N.H. 295, 296 (2001).[2] "To show that the trial court's decision [was] not sustainable, the defendant must demonstrate that the court's ruling was clearly untenable or unreasonable to the prejudice of his case." Id. (quotation omitted). Except with respect to privileges, the rules of evidence do not apply at sentencing hearings, see N.H. R. Ev. 1101(d)(3), which means that the court may consider hearsay. See State v. Tufts, 136 N.H. 517, 519 (1992); cf. State v. Benner, 172 N.H. ___, ___ (decided May 17, 2019) (slip op. at 1, 8-9) (hearsay admissible at hearing to

---

[2] When the defendant asserts that his constitutional rights have been violated as the result of the trial court's sentencing decision, we review that decision de novo. Willey, 163 N.H. at 541. Although the defendant contends that the "court's consideration of improper evidence affected [his] rights and the fairness of his sentence," we do not find this argument sufficiently developed to warrant a constitutional analysis. See State v. Gubitosi, 157 N.H. 720, 728 (2008) (declining to address constitutional argument that was not adequately briefed).

impose deferred sentence).  However, we have cautioned that it is improper for courts to rely upon allegations of other crimes committed by the defendant when such allegations are "unsubstantiated, resolved by acquittals, or the product of speculation."  Tufts, 136 N.H. at 519 (quotation omitted).  Specifically, we have explained that evidence of other criminal conduct considered by the trial court at sentencing must "at least rise to the level of probability."  Id. at 520; see also State v. Cobb, 143 N.H. 638, 660-61 (1999).

The defendant argues that the trial court erred in considering evidence of the defendant's drug enterprise charges at sentencing.  We disagree.  In addressing the defendant's argument, we note initially that, in the trial court, the defendant did not challenge the State's evidence on the basis of reliability, but rather on relevancy grounds.  Although, on appeal, the defendant asserts that his trial court argument was sufficient to preserve his appellate argument, we need not decide whether he is correct because we reject his appellate argument on the merits.  Cf. State v. Coppola, 130 N.H. 148, 156 (1987) (suggesting that, at some point, evidence can be so unreliable as to be irrelevant).

First, the State argues, and the defendant does not dispute, that, at the time of sentencing, he had been indicted on the drug enterprise charges.  Moreover, the sentencing transcript reveals that the trial court was aware of these charges at the time of sentencing.  A grand jury's decision to indict "conclusively determines the existence of probable cause" to believe that the defendant committed the crime with which it charged him.  Ojo v. Lorenzo, 164 N.H. 717, 723 (2013) (quotation omitted).  Probable cause is more than speculation or innuendo; it means that there is "sufficient, trustworthy information to warrant a reasonable person to believe that the [defendant] committed a crime."  State v. Lantagne, 165 N.H. 774, 777 (2013) (quotation omitted).

In addition, the State presented a detailed sentencing memorandum that referenced various Facebook communications between the defendant and potential buyers, and identified seven individuals as his "runners" and 36 individuals who purchased drugs from or through him.  The State possessed sufficiently detailed information about the makeup of the defendant's drug enterprise that it was able to depict the same in a flow chart, which the State provided as an exhibit at sentencing.  Given the trial court's knowledge of the indictments, as well as the other information provided by the State, the court had a reliable basis upon which to conclude that the defendant was involved in a drug enterprise that extended beyond the three buys made by the CI.  We, therefore, find no error.

Affirmed.

HICKS, BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.

6